Hillsborough,
No. 5364.

CARROLL R. TOWLE & a. v. NASHUA,

SAMUEL A. TAMPOSI, *Intervenor.*

Argued June 2, 1965.
Decided July 21, 1965.

*Hamblett, Kerrigan & Hamblett (Mr. Joseph M. Kerrigan* orally), for the plaintiffs.

*Stein, Cleaveland & Rudman* and *Devine, Millimet, Mc-Donough, Stahl & Branch (Mr. Joseph A. Millimet* orally), for the intervenor.

*Leo R. Lesieur,* city solicitor, for the defendant.

DUNCAN, J. This is an appeal, by petition to the Superior Court, from a "decision of the legislative body" of the city of Nashua "in regard to its plan of zoning" (RSA 31:74), which consisted of an ordinance adopted by the board of aldermen on April 14, 1964, rezoning from an "A" residence district to a "G" general business district, a 27-acre tract of land wholly owned by the intervenor Tamposi.

The tract in question adjoins a general business district which is 250 feet in depth, fronting upon the easterly side of the Daniel Webster Highway south of Nashua. The rezoned tract has access to the Daniel Webster Highway at its southwesterly corner. The northerly boundary of the tract parallels Hobart Street at a distance of slightly more than 100 feet south of it. On its easterly side, the bounds of the tract follow an irregular course along privately owned residential properties adjoining South Main Street, a street to which access could be provided from the rezoned tract at its southeast corner. The southerly boundary of the tract adjoins land of the State, upon a portion of which the National Guard Armory is situated.

The plaintiffs Cote reside at 10 Hobart Street, and the southerly boundary of their premises is or may be separated from the rezoned tract by a fourteen-foot right of way. The plaintiffs Towle reside at 630 South Main Street. The plaintiffs Ouellette reside at 1 Clairmoor Drive, but own land on Hobart Street.

By their appeal, the plaintiffs seek to invalidate the amending ordinance upon two major grounds: first, that no public hearing was held by the board of aldermen as required by RSA 31:63; and second, that the ordinance was not adopted by vote of three-fourths of the members of the board, as required by RSA 31:64 when protest against the change has been filed as therein provided. Additionally, the plaintiffs complain that the rezoning of a single tract was illegal, and that the ordinance was not passed as a part of "comprehensive plan." RSA 31:62.

The city and the intervenor contend that the amendment was validly adopted, and also maintain that the protesting owners do not comprise the owners of twenty per cent of the area specified by RSA 31:64, *supra*. They further maintain that the plaintiffs have no standing to appeal under RSA 31:74, 77.

After hearing, the Superior Court (*Leahy*, C.J.) transferred to this court without ruling the questions of law presented by the contentions of the parties with respect to statutory interpretation, and "all issues raised by the pleadings, evidence, and requests of the parties."

Under the statute, the plaintiffs, as "citizens" of Nashua, were entitled to be heard upon the proposed amendment to the zoning ordinance. RSA 31:63. They were also "directly affected" by the action of the board and thus entitled to move for rehearing and to appeal, at least to the extent that their appeal questioned whether the amendment was validly adopted. *Clapp* v. *Jaffrey*, 97

N. H. 456, 461; N. H. & *Beverage Ass'n* v. *Commission,* 100 N. H. 5. See Annot. 37 A.L.R. 2d 1143.

The view advanced by the intervenor, that only persons entitled to protest under RSA 31:64 are "directly affected" by the amendment, would require an unduly narrow interpretation of RSA 31:74 as applied to this case. Persons entitled to protest by reason of ownership of property in, or adjoining, or across from, an area sought to be rezoned may be thought to have a direct pecuniary interest in the change. See *Green* v. *Foster,* 104 N. H. 287. *Non constat* however that owners of more remote property in the district or neighborhood may not also be directly affected should an ostensible change in zoning prove to be invalid. It may be questioned whether the change in statutory language adopted in 1949 from "persons . . . aggrieved" to "persons directly affected" (RSA 31:74, *supra*) "severely restricted" the class of persons entitled to appeal, as the intervenor contends. See *Bryant* v. *Allen,* 6 N. H. 116, 118; *Swackhamer* v. *Kline's Adm'r,* 25 N.J.Eq. 503, 505.

We consider that in the context of an appeal from a decision of the legislative body, the plaintiffs were entitled to question the validity of the legislative action taken, whether they were qualified to protest under RSA 31:64 or not.

We turn therefore to the questions presented by the appeal. The proposed rezoning was referred to the Nashua "City-Wide Planning Board" as provided by *s.* 41 of the city zoning ordinance. As required by the ordinance, the planning board held a public hearing, at which a substantial number of citizens and interested parties registered their views. The proposed change received the approval of the planning board by a vote of six to three.

Before the meeting of the board of aldermen held on April 14, 1964, protests were filed approximately twenty minutes in advance of the meeting by owners of property who the plaintiffs contend were qualified to protest under RSA 31:64. The protests were presented to the meeting by the city clerk, and by a vote of eight to seven were rejected. The amending ordinance was then enacted by a vote of nine to six.

A resolution of the board adopted in 1958 provided that "every item of business except Petitions to be transacted at the regular meetings of the Board" should be submitted to the city clerk on the Thursday preceding the regular Tuesday meeting. A fundamental objection urged by the plaintiffs is that the

board of aldermen held no public hearing as required by the statute. RSA 31:63 (supp), which was first enacted in 1925 (Laws 1925, *c.* 92), and last amended in 1963 (Laws 1963, *c.* 5), provides in pertinent part as follows: "The legislative body of a city shall provide for the manner in which such regulations and restrictions and the boundaries of such districts shall be determined, established and enforced, and from time to time amended. No such regulation, restriction or boundary shall become effective or be altered until after a public hearing in relation thereto, at which parties in interest and citizens shall have an opportunity to be heard." RSA 31:63 (supp).

The Nashua ordinance vests in the board of aldermen the authority to amend the zoning requirements, after reference of the proposal to the planning board. *S.* 41, A. The planning board is required by the same subsection to hold a public hearing, upon specified notice. Section 41, B of the ordinance requires a three-fourths vote of the board of aldermen if the amendment is "disapproved" by the planning board, or in case of "a protest" as provided by RSA 31:64, *supra.* Section 41, C of the ordinance requires the board of aldermen to act within ninety days "after the filing of petition" for amendment of the zoning ordinance.

The intervenor contends that the public hearing held by the planning board in this case satisfied the requirements of RSA 31:63 (supp) *supra,* and argues that the ordinance providing for a public hearing before the planning board was a provision by the "legislative body of such municipality" for the "manner in which" the zoning regulations should be amended. RSA 31:63 (supp) *supra.* These contentions we cannot adopt.

The planning board, under RSA 36:11, first enacted in 1935, has "all powers heretofore granted by law to the zoning commission of a municipality." The zoning enabling act, as first enacted in 1925 before the advent of planning boards, contained the provision which now appears unchanged in RSA 31:65. This is as follows: "ZONING COMMISSION. Such legislative body shall appoint a zoning commission, to recommend the boundaries of the various original districts and appropriate regulations to be enforced therein. Such commission shall make a preliminary report and hold public hearings thereon before submitting its final report, and such legislative body shall not hold its public hearings or take action until it has received the final report of such commission." RSA 31:65.

It is evident from this section that at least as to the establishment of the "original districts," the public hearing before the zoning commission was to be held upon the commission's preliminary report, and was distinct from the public hearing or "hearings" to be held by the legislative body after receipt of the commission's final report. In the light of the provisions of RSA 31:65 we think that the provision for public hearing contained in RSA 31:63, now appearing in RSA 31:63 (supp) which applies to amendments, must be interpreted to require a hearing before the legislative body, whose powers are set forth in the same section.

The probability that the Legislature intended to require a public hearing before the legislative body is confirmed by reference to the "Standard State Zoning Enabling Act" as published by the U. S. Department of Commerce in 1926 and prior thereto, upon which the parties point out our statute was modeled. See 3 Rathkopf, Zoning and Planning, Forms. Speaking of the requirement of public hearing in his book, "Zoning" (1940), Edward M. Bassett, a former member of the advisory committee on zoning under whose auspices the standard act was published, has said: "Omission of . . . the holding of [the public hearing before the local legislative body] will invalidate the ordinance." *P.* 36. See also, "Zoning in New England," 36 B. U. L. Rev. 354, 360.

In *Gricus* v. *Supt. & Insp. of Bldgs.*, 345 Mass. 687, 691, the court had occasion to construe the Massachusetts statute, which specifically requires a public hearing before the legislative body. The court there stated that the hearing "was intended to be something more than a meaningless ceremony," and agreed that its purpose was to "ensure that the current views of local residents will be taken into account by the council when it considers a proposed ordinance."

The provision of the Nashua ordinance with reference to enactment of an amendment after disapproval by the planning board (*s.* 41, B) precludes a finding that the ordinance was designed to delegate to the planning board the authority to hold the public hearing required by the statute. Accordingly, we need not determine whether the board of aldermen had authority under RSA 31:63 (supp) to provide that the public hearing thereby required be held by the planning board instead of the board of aldermen.

We conclude that the amendment to the zoning ordinance was

not validly enacted. *R. I. Home Builders* v. *Budlong Rose Co.,* 77 R. I. 147; *State ex rel* v. *Arnold,* 138 Ohio St. 259.

Since it is not unlikely that the amendment will be presented to the board of aldermen a second time, we deem it appropriate to consider in advance of further proceedings some of the other issues presented by the case. Certain of these arise out of the application to the area owned by the intervenor of the provisions of RSA 31:64, relating to protests. This section provides as follows: "CHANGES IN REGULATIONS, ETC. Such regulations, restrictions and boundaries may from time to time be amended or repealed. In case of a protest against such change, signed by the owners of twenty per cent either of the area of the lots included in such proposed change, or of those immediately adjacent in the rear thereof extending one hundred feet therefrom, or of those directly opposite thereto extending one hundred feet from the street frontage of such opposite lots, such amendment shall not become effective except by the favorable vote of three fourths of all the members of the legislative body of such municipality." RSA 31:64.

With respect to this provision, Bassett has made the following comment: "The enabling act always prescribes who the owners are who may protest. One group [1] is composed of the owners of the land whose zoning it is sought to change. Other groups [2 and 3] are the owners of land across the street and the owners of contiguous land at the side or in the rear. These constitute three separate groups . . . . " Bassett, Zoning, *supra, p.* 39. This corresponds to a footnote appended to the parallel section of the model act, as follows: "There are three groups of property ownership, and if 20 per cent of any one of these object to the proposed change it will require a three-fourths vote . . . These three are (1) the owners of the lots included in the change, (2) the owners of the lots immediately adjacent in the rear, and (3) the owners of the lots directly opposite." With respect to the second category, which appears to be the only one pertinent in this case (unless Cote's property is a lot "directly opposite" because a right of way intervenes), another footnote is as follows: "This phrase is necessary for precision; otherwise there will be doubt, and owners of lots in the rear but some distance away might claim the right to be included in the objection."

Much of the evidence at the hearing was devoted to a determination of the area involved in the land lying within a perimeter one hundred feet wide, surrounding the twenty-seven-acre tract in

question. See *Hamblett* v. *Nashua,* 102 N. H. 318. The area of this perimeter or any part of it can be determined from the record. As applied to this case, the statute may properly be interpreted to require protest by the owners of twenty per cent of the area extending 100 feet from the rezoned area on all sides, except the frontage adjoining the general business district on the Daniel Webster Highway. See *Fort Lauderdale* v. *Des Camps* (Fla.), 111 So. 2d 693. Whether the protesting owners were the owners of twenty per cent of the area of the perimeter lying within the former residential zone has not been determined by the Superior Court, and as matters now stand need not be so determined.

A question is presented as to where and when statutory protests should be filed. Since the protests affect only the action of the legislative body, we are of the opinion that they should be filed with the board of aldermen. *McCabe* v. *City of New York,* 281 N. Y. 349, 354; Bassett, *supra, p.* 38; 1 Rathkopf, Zoning & Planning 28-15. We do not consider that the resolution adopted by the board of aldermen of Nashua in 1958 is applicable to control the time of filing. Such protests do not constitute an "item of business . . . to be transacted." Since the statute fixes no time for filing, a filing at any time before action is taken upon the proposal by the "legislative body" will comply with the statute. RSA 31:64.

*Appeal sustained; remanded.*

All concurred.