Rockingham
No. 81-090

TOWN OF HAMPTON *& a.*

v.

DONALD A. BRUST *& a.*

May 21, 1982

464

*Seth M. Junkins*, of Hampton, by brief and orally, for the Town of Hampton.

*Kearns & Colliander P.A.*, of Exeter (*David S. Brown* on the brief and *John D. Colliander* orally), for the defendants.

*Casassa, Mulherrin & Ryan*, of Hampton (*Peter J. Saari* on the brief and *H. Alfred Casassa* orally), for the intervenor, James L. Whelan.

PER CURIAM. In 1974, pursuant to a purchase-and-sale agreement, the defendants took possession of property located at 225 Ocean Boulevard, in Hampton, New Hampshire. They acquired title in 1975. The first floor of the property is divided into three

apparently separate commercial units. From 1974 until 1980, one area was used as a penny arcade containing fully licensed, *coin*-operated amusement machines. Souvenirs and gifts were sold in a second area. The third area contained *attendant*-operated amusement devices such as pokerino and skeeball.

In June 1980, the Hampton building inspector discovered that the defendants had installed twenty-six additional machines in the second area of the first floor. The building inspector determined that the defendants had violated two sections of the then Hampton Zoning Ordinance, sections 1.6.13 and 3.14, by adding the new machines.

The defendants were advised that they could appeal the building inspector's decision to the zoning board of adjustment to seek a variance from the two sections of the ordinance they had allegedly violated. They appealed, and the board denied their request for a variance on June 19, 1980.

The Town of Hampton filed a petition to enforce the zoning ordinance regulations on June 30, 1980. The town sought to enjoin the defendants from operating the new machines. The Superior Court (*Mullavey*, J.), on February 20, 1981, ruled that section 3.14 prohibited the defendants from expanding their penny arcade. Section 3.14 prohibits "[r]ace tracks, roller-skating rinks, roller coaster, 'the whip', merry-go-rounds, the expansion of any penny arcade or the establishment of any penny arcade within 2,000 feet of any other penny arcade, and/or any similar commercial amusements." The court interpreted section 3.14 to prohibit not only an increase in the size of structures housing penny arcades, but also "those acts which result in an increased *volume* of activity or in the *number* of the *machines* which constituted the non-conforming use." (Emphasis added). The court also concluded that the defendants had no right to "expand" their nonconforming use to additional parts of the building not formerly used for coin-operated, as distinguished from attendant-operated, devices. Upon finding a violation of section 3.14, the trial court granted the injunctive relief requested by the Town of Hampton, and the defendants appealed.

The defendants assert that one section of the Hampton Zoning Ordinance they are charged with violating, § 1.6.13, is void and unenforceable. The trial court stated it was unnecessary to decide this issue because section 3.14 alone clearly prohibited the installation of new machines.

When section 1.6.13 was proposed as an amendment to the Hampton Zoning Ordinance at two January 1976 hearings, "penny arcade" was defined as follows: "A hall, walk, structure or other

building containing three or more coin-operated amusement devices." The minutes of a planning board meeting that took place *after* the *second* hearing reveal that the board added a second sentence to the definition of "penny arcade" that had been presented to the public: "The expansion of a penny arcade is intended to include the addition of more coin-operated amusement devices within an existing penny arcade. . . . " This new sentence was included in the version of section 1.6.13 submitted to, and approved by, Hampton voters in March 1976.

RSA ch. 31 defines the powers and duties of New Hampshire towns: "Any amendment to an existing zoning ordinance as proposed by a . . . planning board . . . shall be submitted to the voters of a town . . . in the following manner: There shall be at least 2 public hearings . . . on the regulation or restriction at which parties in interest and citizens shall have an opportunity to be heard." RSA 31:63-a (Supp. 1981). After the second public hearing, the planning board is directed to determine the final form in which the amendment shall be presented to the voters. This version "shall conform, in substance, to that submitted to the second hearing but may include editorial revisions and textual modifications resulting from the proceedings of that hearing." RSA 31:63-a (Supp. 1981).

The changes made after the second hearing in this case were not "editorial revisions." To interpret "textual modifications" to mean substantive changes would violate the spirit of the statute, the entire purpose of which is to allow the public to participate in the process of amending zoning ordinances. *See* 1 N.H. OP. A.G. 162, 163 (1966). This opinion of the attorney general, analyzing a prior, but substantially similar, version of RSA 31:63-a, advises that "[i]f any amendments are proposed after the second hearing, there should be further hearings at which such amendments are considered before they are placed on the ballot. . . . " 1 N.H. OP. A.G. at 163. No substantial amendments can be included in the ordinance after the second hearing unless an additional, third hearing is held, because the public must have an opportunity to discuss the ordinance before it votes. *Id.* In *Towle v. Nashua*, 106 N.H. 394, 212 A.2d 204 (1965), this court struck down an amendment to the Nashua Zoning Ordinance on the ground that it had been enacted without a public hearing, and therefore had not been validly adopted. *Id.* at 398–99, 212 A.2d at 207.

In contrast, we held in *Collins v. Derry*, 109 N.H. 470, 256 A.2d 654 (1969), that the requirements of RSA 31:63-a were met when all amendments to a zoning ordinance were printed and distributed to all voters, the amendments and town zoning map were

available from the town clerk, and copies of the amendments were displayed in the town. *Id.* at 472, 256 A.2d at 655–56. In this case, Hampton voters were not provided with such information and thus were deprived of "adequate notice of the proposals on which they were to vote." *Id.*, 256 A.2d at 656.

■ We find that the 1976 version of section 1.6.13 of the Hampton Zoning Ordinance was not validly enacted, *see Towle v. Nashua*, 106 N.H. at 398–99, 212 A.2d at 207, and hold that it is void and unenforceable.

Both parties conceded that the defendants' business is in effect a nonconforming use, because section 3.14 of the Hampton Zoning Ordinance prohibits in all areas of the town "the expansion of any penny arcade" within 2,000 feet of certain structures. While section 1.6.13 is invalid, the provisions of section 3.14 remain relevant and in effect.

■ Nonconforming uses are protected by RSA 31:62, as well as by the New Hampshire Constitution. N.H. CONST. pt. 1, arts. 2 and 12; *see L. Grossman & Sons, Inc. v. Town of Gilford*, 118 N.H. 480, 482–83, 387 A.2d 1178, 1180 (1978). Under the statute, zoning regulations "shall not apply to . . . the *existing use of any building*, but . . . shall apply to any *alteration* of a building for use for a *purpose* or in a *manner substantially different* from the use to which it was put before alteration." RSA 31:62 (emphasis added). *See New London v. Leskiewicz*, 110 N.H. 462, 466, 272 A.2d 856, 859 (1970). Once the right to a use is acquired, any zoning ordinance that would prevent that use is inapplicable to the party having the right to the nonconforming use. *Id.*, 272 A.2d at 860. If the defendants use their property so as to avail themselves of the original nonconforming use, and they do not substantially change the nature and purpose of their original use, *id.*, 272 A.2d at 860, then their use is permissible. However, their changes might "constitute such a departure from the original use as to constitute a new and impermissible use." *Id.*, 272 A.2d at 860. Increasing the number of machines and placing them in a new room are not unlawful *unless* they lead to a *substantially different use* of the defendants' property, RSA 31:62, or to a *substantial change* in the *nature* and *purpose* of the original use. *New London v. Leskiewicz*, 110 N.H. at 466, 272 A.2d at 860. This determination must be made on the facts and circumstances of the particular case. *L. Grossman & Sons, Inc. v. Town of Gilford*, 118 N.H. 480, 483, 387 A.2d 1178, 1180 (1978); *New London v. Leskiewicz*, 110 N.H. at 467, 272 A.2d at 860.

██ The extent of a nonconforming use is often carefully defined by a zoning ordinance, *see Amherst v. Cadorette*, 113 N.H. 13, 15, 300 A.2d 327, 329 (1973), or by the specific terms of a variance, *see id.* at 14, 300 A.2d at 329; *see also Beckish v. Planning & Zoning Comm'n*, 162 Conn. 11, 14, 291 A.2d 208, 210 (1971) (statute allowed nonconforming retail store to expand to existing floor space of entire main building). In this case, the defendants' nonconforming use was not specifically delimited by the terms of a variance or ordinance. We therefore must determine the parameters of the defendants' nonconforming use by interpreting "expansion" as it is used in the ordinance the defendants are charged with violating.

██ Section 3.14 prohibits, *inter alia*, "the expansion of any penny arcade or the establishment of any penny arcade within 2,000 feet of any other penny arcade. . . . " As discussed above, the planning board improperly added a sentence onto section 1.6.13 defining "expansion" as "the addition of more coin-operated amusement devices within an existing penny arcade. . . . " The planning board would not have attempted to refine their definition of expansion in this way if they had considered the existing ordinance to prevent *any* expansion. We find that the existing ordinance cannot be read to prevent the defendants from developing their nonconforming use in a way that results in a mere intensification of the use that reflects a natural expansion and growth of trade. *See* 1 R. ANDERSON, AMERICAN LAW OF Zoning § 6.47, at 463–66 (2d ed. 1976).

██ Under such circumstances, where there is no substantial change in the use's effect on the neighborhood, the landowner will be allowed to increase the volume, intensity or frequency of the nonconforming use. For example, a law firm in a building constituting a nonconforming use could increase its numbers of lawyers or clients, its internal and external use of its premises or amount of work activity. Similarly, a nonconforming restaurant could add more tables and chairs or serve more dinners.

 We think that this rule conforms with the strictures of the zoning statute. RSA 31:62 provides that a zoning regulation applies, with respect to an existing structure or use, only to "alteration of a building for use for a *purpose* or in a *manner substantially different* from the use to which it was put before alteration." (Emphasis added). In this case, the arcade portion of the building cannot be expanded into a section of the building that had been a gift shop, a use different from a penny arcade. Therefore, the trial

court could reasonably have concluded that such an expansion violated the ordinance. The burden of proof was on the defendants to show that the use was "not a new and impermissible one" for that portion of the building. *New London v. Leskiewicz*, 110 N.H. at 467, 272 A.2d at 860; *see id.* at 468, 272 A.2d at 861.

On the other hand, we see no reason to prevent the defendants from replacing the attendant-operated machines or devices in area three of the first floor with newer, coin-operated amusement devices. The order below is too broad to the extent it proscribes such a change in area three, especially in light of the recent March 9, 1982, amendments to the Hampton Zoning Ordinance. Article 1.6.13-A now defines an "amusement device" to include both a coin-operated device and "a game, entertainment or amusement" requiring the payment of consideration. "Such devices may include but are not limited to: pinball machines, pool tables, electronic and/or video games, gaming devices or children's rides." Thus, the current ordinance does not bar the substitution of a coin-operated device for one that is attendant-operated.

The defendant next argues that section 3.14 is unconstitutional. Section 3.14 prohibits the expansion of the defendants' penny arcade into a room that had been used for a different purpose, such as a gift shop. The defendants have failed on this record to show that the ordinance is beyond the town's police powers. *L. Grossman & Sons, Inc. v. Town of Gilford*, 118 N.H. at 483, 387 A.2d at 1180; *Metzger v. Brentwood*, 117 N.H. 497, 502–03, 374 A.2d 954, 958 (1977); *see Piper v. Meredith*, 110 N.H. 291, 298, 266 A.2d 103, 108 (1970).

This opinion does not affect the principles that zoning ordinances must "reflect the current character of neighborhoods," *see Belanger v. City of Nashua*, 121 N.H. 389, 393, 430 A.2d 166, 169 (1981), and that variances for limited expansion are proper if the commercial area would now be reasonably compatible with such a change.

*Affirmed in part; reversed in part.*

BOIS, J., did not sit.