Hillsborough-southern judicial district
No. 94-143

## RAY'S STATELINE MARKET, INC.

### v.

## TOWN OF PELHAM
## AND ADOLPH JAROSKY, INTERVENOR

August 14, 1995

*Law Office of David M. Groff,* of Pelham (*David M. Groff* on the brief and orally), for the plaintiff.

*Baldwin and de Seve,* of Concord (*Carolyn W. Baldwin* on the brief and orally), for the intervenor.

*Soule, Leslie, Zelin, Sayward & Loughman,* of Salem, for the defendant, filed no brief.

HORTON, J. The intervenor, Adolph Jarosky, appeals a decision of the Superior Court (*Brennan,* J.) reversing the denial by the defendant, Town of Pelham, of the application by the plaintiff, Ray's Stateline Market, Inc., for permits to move a coffee counter and to change two sign faces. We affirm.

The following facts are undisputed. The plaintiff operates a convenience store at 4 Mammoth Road in Pelham. The intervenor lives across from the store, at 5 Mammoth Road. A business has existed on the site of the convenience store since "an auto repair shop with gas pumps and sundries" was established there in the late 1950's. The town zoned the land residential in 1960, making the business a nonconforming use, permitted to continue pursuant to Pelham Zoning Ordinance, Article V, section 307-26 and RSA 674:19 (1986). Some time ago, the service station stopped selling gas or repairing automobiles. The business had evolved into a convenience store by the time the plaintiff purchased it in 1985. The plaintiff twice applied for variances to expand the business, in 1985 and again in 1986. The Pelham Zoning Board of Adjustment (ZBA) denied the first request but granted the second one. The intervenor appealed, and the superior court reversed the ZBA decision. No appeal was taken from that decision.

In 1992, the town issued the plaintiff a building permit to replace the plastic face panels of two signs on the store's exterior with face panels advertising Dunkin' Donuts, and a building permit to perform electrical and plumbing work necessary to replace a coffee counter in the store with Dunkin' Donuts coffee counters. The plaintiff has been selling coffee and doughnuts since 1985, and had sold Dunkin' Donuts for approximately one year prior to applying for the permits. The permits were part of an effort to install a Dunkin' Donuts "cart operation" selling Dunkin' Donuts brand of doughnuts and coffee. Granting the coffee counter permit would result in an internal change to about 100 square feet of the approximately 2,000 square foot store. Granting the sign permit would not change the locations or dimensions of the signs, but the

lettering would change in order to advertise Dunkin' Donuts instead of Seven-Up and Pepsi.

The town planning director granted the permits in June 1992. The intervenor appealed to the ZBA. *See* RSA 674:33, I(a) (Supp. 1994); RSA 676:5 (Supp. 1994). At the appeal hearing in July 1992, the ZBA upheld the permit to move the coffee counter but reversed the sign permit. The parties both petitioned for a rehearing, after which the ZBA reversed its decision upholding the coffee counter permit and upheld its denial of the sign permit. The plaintiff's subsequent petition for a rehearing was denied, and it was appealed to the superior court. *See* RSA 677:4 (1986) (amended 1994). After a hearing on the merits in August 1993, the superior court reversed the ZBA's decisions to deny the permits. The intervenor now appeals to this court, arguing that the trial court erred: (1) in ruling that the prior superior court decision estopped the defendant and intervenor from raising the issue of the extent and character of Ray's Stateline Market, Inc. as a legal nonconforming use; (2) in substituting its judgment for that of the zoning board of adjustment; and (3) in ruling that the moving of the coffee counter did not constitute an expansion or substantial change of a nonconforming use.

■ The intervenor first contends that the trial court erred in ruling that the prior litigation estopped the defendant and intervenor from challenging the extent and character of the plaintiff's business as a legal nonconforming use in the instant case. We do not agree that the trial court so ruled. In the prior case, the superior court found that "[t]he land here in issue has already been zoned 'residential' by virtue of the town's adoption of its zoning ordinance; however, [Ray's Stateline Market, Inc.] is permitted to operate on this residentially zoned parcel because of its legal status as a 'non-conforming use.'" In the present litigation, the trial court barred the intervenor only from challenging the plaintiff's status as a legal nonconforming use, not from challenging the extent and character of that use:

> The Court finds that the status of Ray's Stateline Market, Inc. as a non-conforming use was previously decided by this Court in the case of *Jarosky v. Town of Pelham*, Docket No. 87-E-276. In that case, all of the present parties were represented. The issue of the Market's status was actually tried and a final decision was rendered. There was no appeal from that decision, which became final in March, 1989. The Court finds that Jarosky and the Town should be barred from relitigating this same issue again in the present case.

> The Court finds that Ray's Stateline Market is a pre-existing non-conforming use within the meaning of RSA 674:19 and Article V of the Pelham Zoning Ordinance.

We note that in his brief to this court, the intervenor accepts the status of the plaintiff as a legal nonconforming use prior to the granting of the permits: "Intervenor does not ask this Court to close down the convenience store, but seeks to halt further expansion of the size and scope of this nonconforming commercial use in the residential zone." Similarly, at the August 1993 merits hearing, the intervenor stated, through his attorney, "We have a nonconforming use. Fine. What we're asking the Court is to say, 'This far and no farther. If you want to expand your business, which is your right, there is plenty of property available in the commercial zones in Pelham.'"

The intervenor next argues that the trial court erred both in substituting its judgment for that of the ZBA, which voted to deny both the coffee counter and the sign permits, and in ruling that the moving of the coffee counter did not constitute an expansion or substantial change of a nonconforming use. The trial court, in reversing the ZBA, accepted the facts as they were presented to the ZBA, and ruled as a matter of law that, upon those facts, granting the permits would not result in a change of use or a significant expansion of the nonconforming use:

> 2. As a matter of law, moving the location of a coffee counter within the Market is not a substantial change or an expansion of this pre-existing non-conforming use. The decision of the ZBA to deny the permit for this change is legally erroneous; and is reversed.
>
> . . . .
>
> 4. The decision of the ZBA denying the change in the sign faces with signs of identical dimensions was legally erroneous. The ZBA did not find, and could not find, that the change in sign faces would constitute a nuisance or have any appreciable effect on the neighborhood. . . . Its decision to overturn the Planning Director's grant of the sign permits was legally erroneous and is reversed.

The trial court's ruling that the ZBA decisions were legally erroneous does not constitute an improper substitution of the court's judgment for that of the ZBA. Under the applicable standard of review, the trial judge may reverse decisions of the ZBA for errors of law:

> All findings of the zoning board of adjustment or the local legislative body upon all questions of fact properly before the court shall be prima facie lawful and reasonable. The order or decision appealed from shall not be set aside or vacated, except for errors of law, unless the court is persuaded by the balance of probabilities, on the evidence before it, that said order or decision is unreasonable.

RSA 677:6 (1986). This court, in turn, "will uphold the decision of the superior court unless that decision is not supported by the evidence or is legally erroneous." *Cohen v. Town of Henniker,* 134 N.H. 425, 426, 593 A.2d 1145, 1146 (1991).

■ Nonconforming uses are protected by RSA 674:19 and by part I, articles 2 and 12 of the New Hampshire Constitution. *See Town of Hampton v. Brust,* 122 N.H. 463, 468, 446 A.2d 458, 460 (1982) (construing prior statute). Under RSA 674:19, a zoning ordinance shall not apply to a pre-existing use unless that use is altered "for a purpose or in a manner which is substantially different from the use to which it was put before alteration." When determining whether a nonconforming use is protected, we bear in mind that "the creation of a nonconforming use depends upon the configuration of specific facts at a certain point in time; therefore, in order to determine how much a nonconforming use may be expanded or changed, we must look to the facts existing when the nonconforming use was created." *New London Land Use Assoc. v. New London Zoning Board,* 130 N.H. 510, 516-17, 543 A.2d 1385, 1388 (1988). In *New London Land Use Assoc.,* we recognized that "[n]onconforming uses may be expanded, where the expansion is a natural activity, closely related to the manner in which a piece of property is used at the time of the enactment of the ordinance creating the nonconforming use," although the "enlargement or expansion may not be substantial . . . ." *Id.* at 516, 543 A.2d at 1388. We note that in the prior decision, the superior court found that the convenience store now owned by the plaintiff "is permitted to operate on this residentially zoned parcel because of its legal status as a 'non-conforming use.'" As no appeal was taken from that decision, we accept the trial court's finding that the plaintiff's business, although it evolved from "an auto repair shop with gas pumps and sundries" into a convenience store, was a legal nonconforming use at the time of that decision.

■ Zoning ordinances often limit the extent of nonconforming uses. *See Town of Hampton,* 122 N.H. at 469, 446 A.2d at 461. Here, Article V, section 307-26 of the Pelham Zoning Ordinance permits a

nonconforming use to continue unless, among other things, it is "[c]hanged to another nonconforming use" or "[e]xtended." "A municipality's power to zone property to promote the health, safety, and general welfare of the community is delegated to it by the State, and the municipality must, therefore, exercise this power in conformance with the enabling legislation." *Britton v. Town of Chester*, 134 N.H. 434, 441, 595 A.2d 492, 496 (1991). With this principle in mind, we construe Article V, section 307-26 of the Pelham Zoning Ordinance to be consistent with RSA 674:19, which we have interpreted, along with its predecessor statutes, as limiting any "extension," "expansion," or "enlargement" of a nonconforming use and prohibiting its change to a "substantially different" nonconforming use. *See New London Land Use Assoc.*, 130 N.H. at 516-17, 543 A.2d at 1388; *Town of Hampton*, 122 N.H. at 468, 446 A.2d at 460-61 (interpreting prior statute). Our question, therefore, is whether granting the permits will result in a change or extension of the plaintiff's nonconforming use that is impermissible under RSA 674:19 or Article V, section 307-26 of the Pelham Zoning Ordinance.

 In evaluating the extent of a nonconforming use, we may consider the following factors:

> the extent to which the challenged use reflects the nature and purpose of the prevailing nonconforming use, whether the challenged use is merely a different manner of using the original nonconforming use or whether it constitutes a different use, and whether the challenged use will have a substantially different impact upon the neighborhood.

*New London Land Use Assoc.*, 130 N.H. at 517, 543 A.2d at 1388. Where, as here, the plaintiff does not seek "an expansion of a nonconforming use that involve[s] more than the internal expansion of a business within a pre-existing structure," *Grey Rocks Land Trust v. Town of Hebron*, 136 N.H. 239, 244, 614 A.2d 1048, 1051 (1992), and the circumstances are such that "there is no substantial change in the use's effect on the neighborhood, the landowner will be allowed to increase the volume, intensity or frequency of the nonconforming use," *Town of Hampton*, 122 N.H. at 469, 446 A.2d at 461.

 The record supports the trial court's decision. The plaintiff periodically drops or adds products or changes brands in order to increase sales, and has sold coffee and doughnuts since 1985. Granting the sign permit will result only in lettering changes to existing signs and will not affect the signs' dimensions, while granting the coffee counter permit will merely result in the

relocation of a coffee counter within the store. These facts support the trial court's rulings that, as a matter of law, the coffee counter permit would not result in a substantial change or an illegal expansion of the nonconforming use and that the sign permit would not result in any appreciable effect on the neighborhood. *See New London Land Use Assoc.*, 130 N.H. at 517, 543 A.2d at 1388; *cf. Town of Hampton*, 122 N.H. at 468, 446 A.2d at 461 ("Increasing the number of [arcade] machines and placing them in a new room are not unlawful *unless* they lead to a *substantially different use* of the . . . property or to a *substantial change* in the *nature* and *purpose* of the original use." (citation omitted)) (interpreting prior statute). As we do not find the trial court's decision to be either unsupported by the evidence or legally erroneous, we affirm the trial court's reversal of the ZBA decisions to deny the plaintiff's permits. *Cohen*, 134 N.H. at 426, 593 A.2d at 1146.

*Affirmed.*

All concurred.