Hillsborough-southern judicial district
No. 2010-201

1808 CORPORATION

v.

TOWN OF NEW IPSWICH

Argued: February 16, 2011
Opinion Issued: April 26, 2011

*Bernstein Shur, P.A.*, of Manchester (*Gregory E. Michael* and *Edward J. Sackman* on the brief, and *Mr. Michael* orally), for the petitioner.

*Bradley & Faulkner, P.C.*, of Keene (*Beth R. Fernald* on the brief and orally), for the respondent.

HICKS, J. The petitioner, 1808 Corporation, appeals the order of the Superior Court (*Lynn*, C.J.) upholding the decision of the zoning board of adjustment (ZBA) of the respondent, Town of New Ipswich (Town), which, in turn, upheld the decision of the respondent's planning board. At issue is whether the planning board erred when it deferred reviewing the petitioner's plans to expand its office space for "no more than 180 days while the [petitioner] pursues Zoning Board approvals." We affirm.

The record reveals the following facts. The petitioner owns an approximately 1.4-acre lot in New Ipswich on which there are two structures: a one-story building of 540 square feet currently used as the Short Stop Restaurant, and a two-story building of 3,760 square feet of office space and 3,515 square feet of storage space. The two-story building (1808 building) is the subject of this appeal.

In 1998, the petitioner requested a special exception to article V.D. 1 of the Town's zoning ordinance to allow an office building in an area zoned as "Village District II." Under Article V.D. 1., office buildings are allowed in such areas only by special exception and only "if . . . the total area of the foundation of the building does not exceed 1,500 square feet." Because the foundation of the 1808 building was 7,275 square feet, the petitioner also sought a variance from the requirement that the building's foundation not exceed 1,500 square feet.

At the May 21, 1998 ZBA meeting at which the petitioner's applications were discussed, the petitioner's agent "explained that the 1808 building will be approximately 3700 square feet. The back part of the building will be used for storage by [the building's] tenants and owner." The ZBA approved the petitioner's applications and discussed the ordinance limitations regarding "the 1,500 square foot area of the foundation for an office building." The ZBA "agreed to contact the Planning Board to determine the basis of the 1,500 figure," and, then, voted unanimously to grant the petitioner the requested special exception and variance.

In January 2008, the petitioner applied to the planning board for site plan review. It submitted plans showing that it intended to use the back part of the building for additional office space and no longer for storage. At a May 6, 2009 hearing on the application, the petitioner argued that expanding the office space into the building's back area did not require further ZBA approval, but was, instead, "a reasonable expansion of an existing [nonconforming] use." The planning board voted to defer its consideration of whether to accept the petitioner's plan for no more than 180 days while the petitioner pursued ZBA approvals.

The petitioner appealed this determination to the ZBA. *See* RSA 676:5, III (2008). After a public hearing, the ZBA denied the petitioner's appeal. In its written decision, the ZBA explained: (1) "[t]he previous [ZBA] . . . decision was specific concerning the use of the back portion of the building as storage by owner and tenants"; and (2) "[g]iven the significant change of use, the abutters and other interested parties are due the opportunity to participate in the due process offered through the variance and special exception application process." The petitioner filed a motion for rehearing, which the ZBA denied, and then appealed the ZBA's decisions to the superior court. The trial court upheld them, and this appeal followed.

The issue in this appeal is whether the planning board erred when it decided that the petitioner needed to obtain additional ZBA approvals before proceeding with its plan to use an additional 3,515 of the building's square footage for office space. The petitioner asserts that additional ZBA approvals were not required because either: (1) the expansion of office space was within the scope of the 1998 variance; or (2) the expansion represents a permissible expansion of a nonconforming use.

■ Our review of zoning board decisions is limited. *Harrington v. Town of Warner*, 152 N.H. 74, 77 (2005). We will uphold the trial court's decision unless the evidence does not support it or it is legally erroneous. *Malachy Glen Assocs. v. Town of Chichester*, 155 N.H. 102, 105 (2007). For its part, the trial court must treat all factual findings of the ZBA as *prima facie* lawful and reasonable, and may not set them aside, absent errors of law, unless it is persuaded by a balance of probabilities on the evidence before it that the ZBA decision is unreasonable. *Kalil v. Town of Dummer Zoning Bd. of Adjustment*, 155 N.H. 307, 309 (2007).

■ We first address whether the ZBA erred when it ruled that using an additional 3,515 of the building's square footage for office space was not within the scope of the petitioner's 1998 variance. Under New Hampshire law, "[t]he scope of a variance is dependent upon the representations of the applicant and the intent of the language in the variance at the time it is issued." *N. Country Envtl. Servs. v. Town of Bethlehem*, 146 N.H. 348, 353 (2001) (quotation omitted). It is a question of fact for the ZBA. *See Rye v. Ciborowski*, 111 N.H. 77, 81 (1971).

■ The record submitted on appeal, while meager, supports the ZBA's determination. Although the language of the variance itself does not contain an express limitation on the square footage to be used for office space, *see N. Country Envtl. Servs.*, 146 N.H. at 353, the representations made by the petitioner's agent at the ZBA meeting at which the petitioner's application was discussed show that the petitioner intended to use only a portion of the building for office space. At that meeting, the petitioner's agent explained that the petitioner intended to use "approximately 3700 square feet" of the building for office space and to use the remainder of the building's square footage "for storage by tenants and owner." Given this record, we conclude that there is evidence to support the ZBA's determination that the 1998 variance "was specific concerning the use of the back portion of the building as storage by owner and tenants."

In this way, this case is distinguishable from *Bio Energy v. Town of Hopkinton*, 153 N.H. 145 (2005), upon which the petitioner relies. In that case, Bio Energy obtained a variance in 1983 so that it could use woodchips

as a source of fuel in its cogeneration facility. *Bio Energy*, 153 N.H. at 147. At the 1983 hearings about the variance, Bio Energy did not specify that it would use only "pure woodchips," and, indeed, raised the possibility of using rubber chips. *Id.* at 155. For twenty years, *Bio Energy* used a fuel mix of woodchips from a variety of waste wood sources, including waste wood from shavings, sawdust, and construction and demolition woodchips. *Id.* In 2001, Bio Energy applied for a building permit to mechanize the delivery of construction and demolition woodchips from the wood fuel storage area to the power plant. *Id.* at 148. Although Bio Energy obtained the building permit, town residents sought and obtained a cease and desist order from the selectmen to prevent it from using construction and demolition woodchips as a fuel source on the ground that such use was beyond the scope of Bio Energy's 1983 variance. *Id.* at 149. The validity of the cease and desist order was litigated first in the superior court and then here. *Id.* at 150.

Ultimately, we ruled that, contrary to the town's assertions, Bio Energy's 1983 variance was not limited to the use of "pure woodchips." *Id.* at 155. In so ruling, we observed that Bio Energy never represented that it would use only "pure woodchips," and that the meetings at which the 1983 variance was discussed did not mention "pure woodchips." *Id.* Moreover, the variance itself did not refer to "pure woodchips." *Id.* By contrast, in the instant case, the minutes of the meeting at which the petitioner's variance was discussed explicitly mention the petitioner's intent to use only 3,700 square feet of the building for office space and to use the remainder of the building for storage. Accordingly, while in *Bio Energy* there was no basis for implying a limitation on the scope of the 1983 variance, there is a basis for implying a limitation on the petitioner's variance. *See id.*

We next address whether the ZBA erred when it failed to apply the doctrine of expansion of nonconforming uses to the petitioner's plan to use an additional 3,515 square feet as office space. Although the petitioner argued that using additional square footage was a mere expansion of a nonconforming use, the ZBA disagreed. In so doing, however, the ZBA did not make any of the requisite findings relative to the permissible expansion of a nonconforming use. *See Guy v. Town of Temple*, 157 N.H. 642, 656 (2008) (remand required because ZBA did not make findings regarding whether petitioner had unlawfully expanded his junkyard operations, let alone the character, nature, scope or effect on the surrounding neighborhood of the purported expansion). We interpret the ZBA's order as a determination that the doctrine of expansion of nonconforming uses did not apply to the petitioner's proposed expansion of its office space. Moreover, we conclude that the ZBA's determination is correct as a matter of law.

The use in this case was allowed by special exception. It is not a use that lawfully existed before the zoning ordinance was enacted and, thus, a "nonconforming use." *Dovaro 12 Atlantic v. Town of Hampton*, 158 N.H. 222, 228 (2009) ("A nonconforming use is a lawful use existing on the land when the ordinance prohibiting that use was adopted."). Nor is it a use allowed by a variance. The 1998 variance was an area variance, not a use variance. *See Boccia v. City of Portsmouth*, 151 N.H. 85, 90 (2004), *superseded by* Laws 2009, 309:1. A use variance allows the applicant to undertake a use that the zoning ordinance prohibits. *Id.* An area variance "authorizes deviations from restrictions which relate to a permitted use," such as limitations on the size or height of the building in which such a use may exist. *Id.* (quotation omitted). The petitioner was allowed to use its building for office space because it had a special exception from the zoning ordinance's prohibition of such uses in the Village District II. The petitioner was allowed to devote 3,700 of its building's square footage for such a use because it obtained a variance from the restriction that the building's foundation not exceed 1,500 square feet.

The petitioner does not explain why cases involving the expansion of nonconforming uses should apply to this case. We have previously distinguished between nonconforming uses and special exceptions, and have explained that "the review standard appropriate to the scope of variances or nonconforming uses" does not apply to special exceptions. *Geiss v. Bourassa*, 140 N.H. 629, 632 (1996). In contrast to a variance or nonconforming use, a special exception "is a use permitted upon certain conditions as set forth in a town's zoning ordinance." *Id.* at 631 (quotation omitted); *see* 3 E. ZIEGLER, JR., RATHKOPF'S THE LAW OF ZONING AND PLANNING § 61:11, at 61-22 (2010). "If the conditions for granting [a] special exception are met, the zoning board must grant it," and by so doing, "[n]o exception to the application of the ordinance is truly made." *Geiss*, 140 N.H. at 632 (quotation and brackets omitted). "[A] special exception is not the equivalent of a nonconforming use. Uses that are permitted as special exceptions are deemed to be permitted as long as they satisfy the special exception provisions in the ordinance." *Kleinman v. Lower Merion Tp. ZHB*, 916 A.2d 726, 729 (Pa. Commw. Ct. 2006).

Nor does the petitioner address the fact that the variance in this case was an area variance, not a use variance. The petitioner relies upon *Bio Energy*, 153 N.H. 145, and *Town of Hampton v. Brust*, 122 N.H. 463 (1982); however, neither case supports the petitioner's assertion that the doctrine of expansion of nonconforming uses should apply to this case. *Bio Energy* involved a use allowed by variance, not by special exception. *Bio Energy*, 153 N.H. at 148, 154. *Brust* involved the expansion of a preexisting

nonconforming use. *Brust,* 122 N.H. at 468-70. Neither *Bio Energy* nor *Brust* concerned a use allowed by special exception. Under these circumstances, we decline the petitioner's invitation to apply the law regarding expansion of nonconforming uses to this case.

For all of the above reasons, therefore, we affirm the trial court's decision and uphold the determinations of the ZBA and planning board that the petitioner must obtain further ZBA approvals before proceeding with its plan to expand its office space.

*Affirmed.*

DALIANIS, C.J., and DUGGAN and CONBOY, JJ., concurred.