**APPEAL OF Michael DIPPOLITO from the Decision of the Zoning Hearing Board of Upper Merion Township,**

**Appeal of Upper Merion Township.**

Commonwealth Court of Pennsylvania.

Argued Sept. 9, 2003.
Decided Oct. 7, 2003.

---

Sean P. Flynn, Norristown, for appellant.

Robert J. Kerns, Lansdale, for appellee.

BEFORE: PELLEGRINI, Judge, and LEADBETTER, Judge, and KELLEY, Senior Judge.

OPINION BY Judge PELLEGRINI.

Upper Merion Township (Township) appeals from an order of the Court of Common Pleas of Montgomery County (trial court) reversing the decision of the Zoning Hearing Board of Upper Merion Township (Board) and granting the request for a special exception filed by Michael Dippolito (Dippolito) allowing him to operate a tub grinder on his property.

Dippolito owns two acres of property which is part of an approved three-lot subdivision in the HI–Heavy Industrial District of the Township. The southeastern portion of the property is adjacent to and abuts a residential neighborhood which is zoned as an R–2 Residential District. Dippolito owns and operates a business called Mario's Tree Service, a landscaping business, and the property in question was purchased to serve this business which serves as a storage site for the business.[1] On September 10, 2001, Dippolito moved a 98,000–pound tub grinder onto the property for the purpose of grinding up trees obtained from his other landscaping operations. He began testing the tub grinder to determine if he was going to purchase the machine and applied for a temporary use permit to use the tub grinder, but the permit was denied and the tub grinder was removed from the property. Subsequently, Dippolito purchased the tub grinder on October 1, 2001, moved it back onto his property and began using it to grind up large logs.

Sometime prior to December 2001, Dippolito was informed by the Township that due to the excessive noise of the tub grinder, he could not operate the machine without first seeking a special exception from the Board under the Township's Code Section 165–153C(1)(d).[2] Dippolito filed an application with the Board on December 5, 2001, requesting a special exception. At the public hearing on January 9, 2002, he testified that the tub grinder would be in operation during the week, Monday through Friday, between the hours of 9:00 a.m. to 4:00 p.m., with a break for lunch. He stated that the tub grinder would be located over 400 feet from the closest property, and that the manufacturer's specifications indicated that the decibel level at that distance would be 70.76. Dippolito further testified that there would be

---

1. The property is owned by D.S.K. Partnership of which Dippolito is a partner.

2. The Township's Code §§ 165–153C(1) and (2) provides:
   C. Special exceptions.
   (1) Any of the following uses shall be permitted only when authorized as a special exception:
   (a) Abattoirs; breweries; meat-packing; tanning, curing or storage of leather, rawhides or skins; manufacture or processing of fertilizer, wood pulp, disinfectants or soap.
   (b) Lime kilns, flour mills, manufacture of cement.
   (c) Foundries, steel mills, manufacture or processing of rubber products.

   **(d) Any other use which is or may be, in comparable degree to any of the forgoing, noxious or offensive by reason of odor, dust, fumes, smoke, gas, vibration, illumination or noise, or which is or may be dangerous to the public health, welfare or safety or which constitutes or may constitute a public hazard, whether by fire, explosion or otherwise.** (Emphasis added.)
   (2) Any applicant for special exception for any of the above uses shall have the burden of showing to the satisfaction of the Zoning Hearing Board that provision is made to adequately reduce or minimize the noxious, offensive, dangerous or hazardous feature or features thereof, as the case may be.

three to five truckloads of wood delivered daily to the property. In addition, there would be numerous trucks from his business entering and leaving the property throughout the day. He stated that he had no plans to fence his property. In opposition to his application, numerous neighbors testified that the tub grinder was extremely noisy when in operation.

After the hearing, the Board initially noted that Dippolito's proposed use was not specifically enumerated in Code Sections 165–153C(1)(a)–(c), but that its very nature made its use akin to a cement plant, a foundry or a steel mill, and, therefore, fell within Code Section 165–153C(1)(d). The Board then denied his request because he had not met his burden under Code Section 165–153(C)(2). It determined that based on Dippolito's own testimony, the neighbors would be constantly exposed to at least 70 decibels of noise during the daily operation of the tub grinder, he had taken no measures to adequately reduce or minimize the noise levels, and, in fact, had removed all of the surrounding trees that would have served to dissipate some of the noise to the surrounding neighbors. The Board further determined that because there would be numerous trucks entering and leaving his property, there was no evidence that an increase in traffic would be accommodated

in a safe and efficient manner, and Dippolito had not yet received a approved subdivision plan indicating ingress to and egress from his property, he had not met his burden under Code Sections 165–250B(1)(c), (d) and (e).[3]

Following that denial, Dippolito submitted a second application requesting an interpretation that the use of the tub grinder on the site was permitted by right and, in the alternative, a request for a special exception under Code Section 165–153(C)(1)(d). He indicated that he would meet the requirements of Code Section 165–153(C)(2) and that he had made provisions to adequately reduce or minimize the noise from the tub grinder. Another public hearing was held at which Dippolito testified that the tub grinder would operate at 106–108 decibels, and he intended to install buffering, a stockade fence and a retaining wall in the future, but could not afford to do so until the tub grinder was in operation for a period of time. In the meantime, Dippolito stated that he would maintain an existing wood pile as a buffer and plant additional trees. He stated that he would only operate the tub grinder between 9:00 a.m. and 4:00 p.m. when most residents were away from their homes at work. As to the Board's concern regarding peak traffic, Dippolito testified that

---

**3.** Code Sections 165–250B(1)(c), (d) and (e) provide:

(1) Special Exceptions. The Board may grant approval of a special exception, provided that the applicant complies with the following standards for the special exception. The burden of proof rests with the applicant.

(c) The applicant shall establish, by credible evidence, that the proposed special exception will not adversely affect neighboring land uses in any way and will not impose upon its neighbors in any way but rather shall blend with them in a harmonious manner.

(d) The applicant shall establish, by credible evidence, that the proposed special exception shall be properly serviced by all existing public-service systems. The peak traffic generated by the subject of the approval shall be accommodated in a safe and efficient manner, or improvements shall be made in order to effect the same. Similar responsibility shall be assumed with respect to other public-service systems ...

(e) The applicant shall establish, by credible evidence, that the proposed special exception shall be in and of itself properly designed with regard to internal circulation, parking, buffering and all other elements of proper design.

there would be ten vehicles per day for a total of 20 trips per day generated by the use of the tub grinder, which would be an increase from the five to eight trips per day currently being generated by his existing business. He agreed to limit the time for those deliveries to normal working hours as determined by the Township. The Board again denied Dippolito's requests, stating that the second application was res judicata because he was seeking the same relief. Nonetheless, it went on to determine that Dippolito had not met his burden under the Code because he still had not made any substantive provisions to install a buffer between his property and the property adjacent to the Residential District. The Board also found that he had presented no new testimony regarding compliance with the Code as it related to accommodating peak traffic in a safe and efficient manner.

■ Dippolito appealed to the trial court which reversed the Board. The trial court initially found that the Board incorrectly concluded that the doctrine of res judicata barred Dippolito's second application because there had been substantial changes in conditions or circumstances relating to his property. Specifically, it determined that in Dippolito's second application, he sought to use Lot 2 of the subdivided property which did not exist as a separate parcel when the first application was filed and resolved because there was no final subdivision approval at that time. Also, the second application requested an interpretation of the Code that the use was permitted by right. Finally, Dippolito presented testimony regarding proposals to buffer the site to reduce the noise. As to the application for the special

exception, the trial court found that the Board erred in denying Dippolito's application because the Code did not provide a standard as to what level of noise would create an adverse impact and the Board imposed no conditions. Therefore, the trial court reasoned that Dippolito could not comply with that which did not exist. Also, the Board did not show that the operation of the tub grinder would result in substantial harm. The trial court further found that Dippolito had provided evidence that he made provisions to buffer the noise levels and accommodate peak traffic by limiting deliveries to normal working hours as determined by the Township. This appeal by the Township followed.[4]

■ The Township initially argues that the trial court erred in finding that Dippolito's second application was not barred by the doctrine of res judicata because he made no substantial substantive changes to his application and sought the same result in both applications to the Board, i.e., to use his property to operate a tub grinder in connection with his landscaping business. The doctrine of res judicata applies when the following four elements are met: 1) identity of the thing sued for; 2) identity of the cause of action; 3) identity of persons and parties to the action; and 4) identity of the quality in the persons for or against whom the claim is made. *City of Pittsburgh v. Zoning Board of Adjustment*, 522 Pa. 44, 559 A.2d 896 (1989). However, res judicata is applied sparingly in the area of zoning because the need for flexibility outweighs the risk of repetitive litigation. *Grim v. Borough of Boyertown*, 141 Pa.Cmwlth. 427, 595 A.2d 775 (1991). Therefore, res judicata will

---

4. Our scope of review of the trial court's order is limited to determining whether there was an abuse of discretion or an error of law committed by the trial court in reviewing the

decision of the Board. *Borough of Bradford Woods v. James C. Platts and Deborah Platts*, 799 A.2d 984 (Pa.Cmwlth.2002).

not bar a second application even if identical to an earlier application if there has been a substantial change in conditions or circumstances relating to the land itself. *Id.*

As the trial court found, there had been a substantial change in the conditions relating to the land relative to Dippolito's second application because, in his first application, Lot 2, the parcel which was the subject of the second application, did not even exist as a separate parcel at the time of the first application as there had been no final subdivision approval at that time. There was also a change in the circumstances relating to the land because at the hearing on the first application, Dippolito presented no testimony regarding any buffering that would be installed adjacent to the residential distraction, while on the second application, Dippolito testified that he was going to buffer the site with a retaining wall, a wooden stockade fence

and evergreen trees. Because there were substantial changes to the land, the trial court properly concluded that *res judicata* did not bar Dippolito's second application.

■■■ The Township then argues that Dippolito failed to prove that he was entitled to the grant of a special exception [5] because he failed to introduce sufficient evidence that he would reduce or minimize the noise, odor, dirt and dust that would emanate from the site as a result of the proposed use.[6] More specifically, the Township points out that Dippolito testified that the tub grinder would operate at a level of 106–108 decibels continuously from 9:00 a.m. to 4:00 p.m. five days a week, with only a break for lunch. He also admitted that the operation of the tub grinder would constitute a hazard without a fence, and he would only be able to install a fence after one year of operation due to monetary restraints. Finally, Dippolito offered no specific plan to reduce the

---

**5.** A special exception is not an exception to the zoning ordinance, but is a use that is expressly permitted provided there is no showing of a detrimental effect on the community. *In Re: Appeal of Brickstone Realty Corporation,* 789 A.2d 333 (Pa.Cmwlth.2001), *petition for allowance of appeal denied,* 569 Pa. 723, 806 A.2d 863 (2002); *Lower Moreland Township Zoning Hearing Board,* 139 Pa.Cmwlth. 206, 590 A.2d 65 (1991). The applicant for the proposed use has the burden of proving that the proposed use meets the requirements of the zoning ordinance for the granting of the special exception. *Brickstone Realty.*

**6.** Under Zoning Code Section 165–250(B)(1), the following criteria, which are applicable to this case, are required for granting a special exception:

\* \* \*

(c) The applicant shall establish, by credible evidence, that the proposed special exception will not adversely affect neighboring land uses in any way and will not impose upon its neighbors in any way but rather shall blend with them in a harmonious manner.

(d) The applicant shall establish, by credible evidence, that the proposed special exception shall be properly serviced by all existing public-service systems. The peak traffic generated by the subject of the approval shall be accommodated in a safe and efficient manner, or improvements shall be made in order to effect the same. Similar responsibility shall be assumed with respect to other public-service systems, including but not limited to police protection, fire protection, utilities, parks and recreation. (e) The applicant shall establish, by credible evidence, that the proposed special exception shall be in and of itself properly designed with regard to internal circulation, parking, buffering and all other elements of proper design.

\* \* \*

(g) *The Board shall impose such conditions as are necessary to ensure compliance with the purpose and intent of this chapter, which conditions may include plantings and buffers, harmonious design of buildings and the elimination of noxious, offensive or hazardous elements.* (Emphasis added.)

noise, dust and dirt caused by the increased traffic flow from five to eight trips per day to a maximum of 20 trips per day in and out of the property.

Evidence in opposition to the use of the special exception "must show a high probability that the use will generate adverse impacts not normally generated by this type of use and that these impacts will pose a substantial threat to the health and safety of the community." *Greaton Properties, Inc. v. Lower Merion Township,* 796 A.2d 1038, 1045 (Pa.Cmwlth.2002). Because Dippolito's property is located in the HI–Heavy Industrial District, and noise, dust, odors and dirt can normally be found in a heavy industrial area, the use of the tub grinder would not generate adverse impacts not normally generated by this type of use.

As to whether the use of the tub grinder would pose a substantial threat to the health and safety of the neighboring residential community, the Code does not contain any standards for noxious or offensive elements, e.g., acceptable decibel levels or odor levels. Because no standards exist and the Board did not impose conditions pursuant to Code Section 165–250(B)(1)(g) with which Dippolito had to comply, Section 165–153(C)(2) of the Code controlled, which only required that Dippolito show that he had made provisions to adequately *reduce or minimize* the noxious or offensive features of the proposed use.

Here, Dippolito testified at the second application hearing that he would operate the tub grinder at the furthest possible location from the residential district; he was going to buffer the noise against the residential district with a retaining wall, a wooden stockade fence and evergreen trees; he would operate the tub grinder during hours when most of the residents would be out of their homes, and he would not run the machine in the evening or on weekends. He further testified that he would comply with any noise standards provided for under the Occupational Safety and Health Act. *See* 29 C.F.R. § 1910.95. As to safety issues, Dippolito testified that he would install a six-foot fence around the machine to guard against any adverse impact, and that the tub grinder would always be caged and locked to prevent any trespassers from starting its engine. He also added that ultimately he would place a fence around the entire property. Finally, regarding the traffic generated by the number of trucks entering and leaving his property, Dippolito testified that a maximum of ten vehicles a day would enter and exit the property in the morning and afternoon for a total of 20 trips per day. However, he testified that he would limit the time of those deliveries to the normal working hours as would be determined by the Township. Notably, there was no evidence presented by the Township from a traffic expert that there was any high degree of probability of specific detrimental consequences to the public welfare from the increase in traffic onto Dippolito's property. Because Dippolito testified that he would make provisions to adequately reduce or minimize the noxious or offensive features of the tub grinder, we agree with the trial court that he was entitled to the grant of a special exception.

Accordingly, the decision of the trial court is affirmed.

## ORDER

AND NOW, this *7th* day of *October,* 2003, the order of the Court of Common Pleas of Montgomery County, dated January 30, 2003, is affirmed.