David KLEINMAN, Deborah Kleinman,
Thomas R. Schmuhl, Jean G. Schmuhl
and Jordan J. Driks, Appellants

v.

LOWER MERION TOWNSHIP ZON-
ING HEARING BOARD, Lower Mer-
ion Township and Akiba Hebrew
Academy.

Commonwealth Court of Pennsylvania.

Argued Nov. 13, 2006.

Decided Dec. 29, 2006.

Reconsideration and/or Reargument
Denied Feb. 9, 2007.

Edward Greene, Paoli, for appellants.

Sean P. Flynn, Norristown, for appellees, Lower Merion Township Zoning Hearing Board and Lower Merion Township, and Fred Beecher Fromhold, Villanova, for appellee, Akiba Hebrew Academy.

BEFORE: COLINS, President Judge, and FRIEDMAN, Judge, and McCLOSKEY, Senior Judge.

OPINION BY President Judge COLINS.

David and Deborah Kleinman, Thomas R. and Jean G. Schmuhl, and Jordan J. Dirks (Objectors) appeal an order of the Court of Common Pleas of Montgomery County that affirmed a decision of the Zoning Hearing Board (ZHB) of Lower Merion Township granting an application filed by Akiba Hebrew Academy (Akiba). Akiba is a private educational institution, as defined in the Township's zoning Ordinance. Private education institutions are permitted as special exceptions in the R–1 Residential district in which Akiba's properties are located. Akiba owns two parcels of land that are at issue in the application. Parcel 1 is located at 233 North Highland Avenue, and Parcel 2 is located at 280 Melrose Avenue; however, the parcels are adjacent to each other. Akiba

uses Parcel 1 for its educational institution. Parcel 1 includes an old residential building with an attached classroom wing, administrative offices, and a multi-purpose room; there are 68 parking spaces on the property. Parcel 2 includes a residential building, a greenhouse, a pool and pool house, a garage, and a storage building. Akiba rents the residence on Parcel 2 to a third party.

Akiba filed its application on March 23, 2004. The application sought approval to merge the two adjoining properties. Akiba also requested approval under the Ordinance's special exception provisions to modify its use of the two parcels in the following manner: Expand the size of the facility on Parcel 1 by adding (1) a third floor to an existing two-story area of the facility, (2) a three-story addition (attached to the present classroom wing), and (3) a two-story addition (attached to both the classroom wing and the original estate house). The proposal also anticipated internal modifications and external alterations to the driveway and parking area. Akiba also requested permission to convert the single-family residence on Parcel 2 to administrative offices.

The Board's decision focused largely on the spacing and density provisions of the Ordinance applicable to requests to expand special exception uses, which provides in pertinent part as follows:

Y. Except for those uses permitted by §§ 155–11S(7), 155–128, 155–144 and 155–141.4, and except for those uses involving fewer than seven residents/participants per day, the special exception ... use permitting the initial use or the expansion thereof shall only be granted if the applicant's evidence establishes compliance with the following conditions:

. . .

(3) Spacing and density regulations. No more than one property whose use is regulated by this subsection shall be permitted:

(a) Within the same block, defined as both sides of an uninterrupted road segment between two intersections; and

(b) Within 500 feet of another use regulated by this subsection and/or a nonconforming use, measured by the shortest distance between the lot on which the proposed use will be located and the lot or lots which contain the existing use.

Zoning Code § 155–11 Y(3).

One other property, the Temple Adeth Israel, permitted as a special exception is located within 500 feet of and on the same block as Akiba. The Honorable Thomas P. Rogers of the Court of Common Pleas of Montgomery County neatly summarized the parties' positions with regard to the interpretation of this provision: "Akiba argued before the Board that this provision prohibits **more** than one, but not **merely one,** regulated use on the same block **and** within 500 feet of another regulated use. Appellants argued that the Commissioners intended to prohibit **any** two regulated uses on the same block **or** within 500 feet of each other." *Appeal of David Kleinman,* No. 04–30631, slip op. 10–11 (Montgomery County Court of Common Pleas May 1, 2006). Thus, there are two interpretational issues involved: (1) whether more than a single special exception is permitted and (2) whether, assuming that more than one is permitted, it is not permitted only if it is both on the same block and within 500 feet of the other special exception.

The provision applies to expansions of existing special exceptions as well as new special exceptions, and therefore, Objectors asserted that the Code permitted no expansion of Akiba because of the existence of the other special exception within the same block. Relying upon this provision of the Code, the Objectors argued to the Board that, as to Parcel 1, the Code prohibited the expansion of the existing special exception because Akiba is within the same block as another special exception. Akiba argued that the provision only precluded the granting of more than one additional special exception, and that Akiba constituted that one special exception in addition to the other that exists within the same block and within 500 feet of Akiba.

Objectors make the same argument in this appeal, asserting that the Board erred in its interpretation of the density and spacing provision. Objectors first argue that the Board erred by addressing the conversion of the residential property located on Melrose Avenue as part of the expansion of an existing special exception. However, part of Akiba's application included a request to merge the lots. Once merged, the Melrose property, despite its use as a residence, became part of the unified lots. Thus, from this perspective, the alteration of the property did involve an expansion of the Highland Avenue property used for educational purposes. However, even if the Court were to disregard the fact that the lots are merged, our conclusions below regarding the Board's interpretation of the density provision would support the approval of Parcel 2 as an independent special exception.

■ As noted above, Objectors argue that, because another special exception exists within 500 feet of, and within the same block as, Akiba, the provision does not permit expansion of Akiba. Objectors contend that by applying the rules of statutory construction to the Ordinance, the Court should conclude that their interpretation is correct. Thus, they contend that the common and sensible construction of

the Ordinance language results in no ambiguity and that therefore, the Board rejected the clear meaning of the Ordinance pretextually for the purpose of pursuing its spirit. We disagree. The provision is ambiguous, because it is open to more than one interpretation.

■ Because the language is ambiguous, the Board and the trial court correctly construed the language in favor of the landowner. Section 603.1 of the Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *added by* the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10603.1 provides in pertinent part,

> In interpreting the language of zoning ordinances to determine the extent of the restriction upon the use of the property, the language shall be interpreted, **where doubt exists** as to the intended meaning of the language, written and enacted by the governing body, in favor of the property owner and against any implied extension of the restriction.

(Emphasis added.) With this rule in mind, we conclude that the language at issue indicates that the governing body anticipated that more than one, but no more than one additional special exception could be permitted. We further conclude that one additional special exception (or the expansion of an existing special exception) is permitted as long as the second (or proposed expanded special exception) is not both within a block of, and within 500 feet of, an existing special exception.

If the governing body had intended that no additional special exceptions or expansions thereof are permitted if one already exists within the same block or within 500 feet of the proposed new special exception or the proposed expansion, it could have said that no proposed special exception or expansion shall be permitted if it is within 500 feet of, or within the same block as, an existing special exception. As the trial

court noted, the township's governing body, when adopting the Ordinance, elected to adopt specific and clear separation and spacing requirements as to other regulated uses, but did not do so when adopting this provision. The use of direct and clear prohibitions elsewhere in the Ordinance support the Board's reasoning, because the rules of statutory construction also inform us that, where a legislative body selects dissimilar language in different section of a statute, such treatment suggests that the enacting body intending dissimilar results. *See Corley v. Pennsylvania Board of Probation and Parole*, 83 Pa.Cmwlth. 529, 478 A.2d 146 (1984).

■ Objectors also propose that, even if the Ordinance is ambiguous, the application at issue here involves a nonconforming use, and hence, the Board should have applied a rule of law that is applicable to nonconforming uses, namely that, in order to discourage the continuation of nonconforming uses, reviewing bodies such as the Board should construe ordinances strictly.

■ We are confused by Objectors' assertion that "the special exception in the Akiba Application is a nonconforming use." Brief, p. 21. Akiba is a valid special exception, and it proposes an expansion of a valid special exception. In making the claim that a nonconforming use is involved, Objectors assert only that there are already a number of special exceptions in the area, and that therefore, the Board should have interpreted the provision strictly in order to discourage further special exception uses in the area. This argument warrants little discussion because, as noted by the Board, a special exception is not the equivalent of a nonconforming use. Uses that are permitted as special exception are deemed to be permitted as long as they satisfy the special exception provisions in the ordinance.

Based upon the rule favoring the interpretation of ambiguous ordinances in favor

of property owners, and the language of the provision that permits the interpretation adopted by the Board and the trial court, we conclude that the Board did not err in its construction of the provision.

■ Objectors' last arguments concern whether the Board's consideration of Akiba's application was erroneous with regard to several public interest, health, safety, and welfare provisions, and the Township's Comprehensive Plan. The Objectors argue that Parcel 2, the Melrose Avenue property, which has not been used as part of the educational institution, but as a residence, does not satisfy the Ordinance ingress and egress requirements. The Board and trial court concluded that this aspect of the Akiba property was lawfully nonconforming as to this requirement. Because the Melrose property was not used as part of the original Akiba special exception use, we are uncertain as to the trial court's conclusion that the ingress and egress at this property is nonconforming. However, the Objectors have offered no legal argument in reply to the Board's reasoning that the property is lawfully nonconforming as to the provision. Accordingly, we will not address the argument further.

Objectors, pointing to a traffic study in the record, also argue that the application fails to satisfy the off-street parking requirements of the Ordinance. The study indicated that, without approval of the aspects of the special exception application relating to the Melrose property, Akiba would have difficulty with loading and queuing for Akiba's student body and that study's discussion of the peak traffic hours for pickup and drop-off suggest that without Akiba's proposed personnel assistance at those times, the safety and efficiency of the operation is questionable. Section 155.95.AA of the Ordinance requires the following with regard to parking spaces: 1½ parking spaces per two students of

driving age; one space per faculty member or volunteer; one visitor space per 25 students/participants; and one space per five seats for the largest place of public assembly. In this case, the Board noted that Akiba had not increased its student population, nor had it increased in any significant amount the number of faculty it employed. Also, the Board noted that the size of the largest assembly room had not changed. Thus, the Board concluded that no additional parking was necessary, as those aspects of the special exception use had not changed.

Objectors assert that the Board erred in granting the application because the traffic study did not include an analysis of the Melrose property and evidence that the parking there satisfies the Ordinance. The Board noted that Akiba's student population had not changed and that it complied with the requirement, and in fact, would provide for an additional 29 parking spaces, bringing the total number of parking spaces to 97, which additional spaces the Board correctly concluded could only improve loading and parking conditions. The Board also noted that the use of the Melrose Avenue property did not implicate the parking provisions because the Ordinance applies only to educational uses and only for additional students or participants. Section 155.95.AA(3). This subsection makes clear that the provision applies only when increases in student or participant populations are proposed. Since Akiba has not proposed increases in these populations, we agree with the Board that no additional spaces are required. With regard to loading and queuing, we also agree with the Board's evaluation that the traffic study indicates that the conditions satisfy the Ordinance requirements.

■ Objectors also assert that the Board's grant of Akiba's application will result in a violation of Section 155–147 of the zoning Ordinance, which relates to

preservation area requirements. This provision requires landowners or developers to preserve open space in residential districts where a tract is five acres in size or larger. However, as Akiba notes, although the Akiba property is in a residential district and the two parcels combined are greater than five acres in size, Section 155–143(B) indicates that properties "within the district used or intended to be used or intended to be developed for residential purposes shall comply with the provisions of this article." We can infer from this provision that the governing body intended developers to provide such space only when the intended tracts are being use for, or are to be developed for, a residential use.

Finally, the Objectors generally contend that testimony of record supports the conclusion that the granting of the application will adversely affect the health, safety, and welfare of the community. As Akiba notes, the Objectors did not brief the specific issue other than in the context of the above-cited parking, egress, and open space arguments. Furthermore, we agree with Akiba that the Objectors have not satisfied the burden on them to establish that there is a high probability that the proposed expansion will create adverse impacts unusual to this type of use. *Appeal of Michael Dippolito*, 833 A.2d 336 (Pa. Cmwlth.2003), *petition for allowance of appeal denied*, 578 Pa. 696, 851 A.2d 143 (2004).

Based on the foregoing, we affirm the trial court's order.

## *O R D E R*

AND NOW, this 29th day of December 2006, the order of the Court of Common Pleas of Montgomery County is affirmed.