Energy Facility Site Evaluation Committee
No. 99-471

# Appeal of the Londonderry Neighborhood Coalition

## (Energy Facility Site Evaluation Committee)

August 18, 2000

*Corcoran & Goudas, P.L.L.C.*, of Londonderry (*Brian C. Goudas* and *Thomas J. Corcoran* on the brief, and *Mr. Goudas* orally), for the petitioner.

*McLane, Graf, Raulerson & Middleton, P.A.*, of Concord (*Gregory H. Smith* and *Barry Needleman* on the brief, and *Mr. Smith* orally), for the respondent.

*Forman & Bernier, P.A.*, of Londonderry (*James M. Costello* on the brief), for the intervenor, Town of Londonderry.

GRAY, J. The petitioner, Londonderry Neighborhood Coalition (LNC), appeals the energy facility site evaluation committee's (EFSEC) approval of respondent AES Londonderry's (AES) application to construct and operate a natural-gas power facility. We affirm.

On July 6, 1998, AES filed an application with EFSEC to construct and operate a 720 megawatt natural-gas power facility in Londonderry. Over one hundred residents of Londonderry and Litchfield formed LNC, a nonprofit corporation, which was granted limited intervenor status by EFSEC. After three days of adversarial hearings, EFSEC approved AES's application on May 25, 1999. LNC actively participated in the hearings by filing information, presenting witnesses, and providing testimony and exhibits. EFSEC denied LNC's motion for rehearing and this appeal followed.

On appeal, LNC argues that EFSEC's decision and its denial of LNC's motion for rehearing are contrary to law, unjust, or unreasonable because: (1) State agency reports were incomplete; (2) EFSEC improperly delegated its authority; (3) EFSEC improperly approved pollution controls; (4) EFSEC failed to impose a monitor-

ing requirement for potential fog or ice conditions; and (5) EFSEC ignored the results of a public referendum opposing the plant. In response, AES maintains that LNC lacks standing to pursue this appeal and that EFSEC's decision was reasonable and lawful.

We first address LNC's standing. In order to have standing to appeal a decision of an administrative agency denying a motion for rehearing, an appellant must demonstrate that the appellant has suffered or will suffer an injury in fact. *Appeal of Richards*, 134 N.H. 148, 154, 590 A.2d 586, 589 (1991), *cert. denied*, 502 U.S. 899 (1991).

LNC intervened in this matter because it asserted that the operation of AES's power plant, in close proximity to Londonderry's residential neighborhoods, would affect the value of homes owned by LNC members, thus directly affecting their economic interests. Because EFSEC could have found that LNC's members have suffered or will suffer a direct economic injury as a result of the decision approving AES's application, LNC has standing to pursue this appeal. *See* RSA 541:3 (1997).

We next turn to LNC's arguments on appeal. RSA 541:13 (1997), provides in pertinent part:

> [T]he burden of proof shall be upon the party seeking to set aside any order or decision of the commission to show that the same is clearly unreasonable or unlawful, and all findings of the commission upon all questions of fact properly before it shall be deemed to be prima facie lawful and reasonable; and the order or decision appealed from shall not be set aside or vacated except for errors of law, unless the court is satisfied, by a clear preponderance of the evidence before it, that such order is unjust or unreasonable.

First, LNC contends that at the time of EFSEC's decision, certain required State agency reports remained incomplete in violation of RSA chapter 162-H (1994 & Supp. 1999). In conjunction with this argument, LNC maintains that it was not provided an opportunity to comment on the terms and conditions imposed by the New Hampshire Department of Environmental Services (DES).

Under RSA 162-H:7, IV, "[e]ach application shall contain sufficient information to satisfy the application requirements of each state agency having jurisdiction, under state or federal law, to regulate any aspect of the construction or operation of the proposed facility, and shall include each agency's completed application forms." Each

applicant must describe "in reasonable detail the type and size of each major part of the proposed facility." RSA 162-H:7, V(a) (1994).

■ LNC first contends that many of the conditions and terms set forth in the State agency reports required that AES provide additional information. For example, counsel for the public as well as members of the public themselves raised concerns, requiring additional information, relative to emissions from the combustion turbines and the use of recycled wastewater in the cooling towers. In its order denying LNC's motion for rehearing, EFSEC found that the reports submitted were sufficient for it "to render a decision and to determine appropriate terms and conditions." The record reveals that, despite the additional information called for, AES fully described in detail each major part of its facility as required by statute. RSA 162-H:7, V(a). For instance, AES described the wastewater design review and discharge permit conditions, the site specific permit conditions, and the wetlands permit conditions. Because the concerns of the public referred to by LNC did not prevent AES from describing in detail the type and size of each major part of its proposed facility as required by RSA 162-H:7, V(a), EFSEC did not act unreasonably or unlawfully when it determined that the State agency reports were sufficient.

Furthermore, LNC has not shown that EFSEC committed an error of law by failing to give it the opportunity to comment on the DES conditions. Within thirty days after an application is accepted, EFSEC must hold a public hearing in each county where the proposed facility will be located. RSA 162-H:6, IV (1994), :10, I (Supp. 1999). Subsequent hearings, which are adversarial in nature, allow for public input. RSA 162-H:10, II (1994). Within nine months after EFSEC accepts an application, EFSEC must issue or deny a certificate to the applicant. RSA 162-H:6, VII (1994). The certificate "may contain such reasonable terms and conditions as the committee deems necessary." RSA 162-H:16, VI (1994).

■ In this case, the DES conditions were attached to AES's certificate of site and facility (certificate) after the public deliberative process was over. Since RSA chapter 162-H permits EFSEC to attach reasonable terms and conditions to a certificate after the public deliberative process is complete, it follows that RSA chapter 162-H does not provide an applicant with the statutory right to comment on those conditions. *See, e.g., Nestor v. Town of Meredith*, 138 N.H. 632, 635, 644 A.2d 548, 550-51 (1994) (holding that abutters have a right to comment on conditions precedent to approval of an application, not on conditions subsequent to approval imposed by the ZBA).

■ LNC has also not demonstrated that EFSEC violated due process. "Where issues of fact are presented for resolution by an administrative agency due process requires a meaningful opportunity to be heard." *Society for Protection of N.H. Forests v. Site Evaluation Comm.*, 115 N.H. 163, 168, 337 A.2d 778, 783 (1975). LNC was provided the opportunity, through public counsel, who was appointed by the attorney general to represent the public interest, for public input during the three-day hearings. During these hearings, public counsel had the opportunity to file information, present witnesses, and fully participate in the process. EFSEC's decision reflects the comments from LNC and its extensive input. For these reasons, we conclude that LNC has not met its burden of showing by a clear preponderance of the evidence that it was not provided a meaningful opportunity to be heard.

LNC's second contention is that EFSEC unlawfully delegated the authority to determine terms and conditions to other State agencies. *See* RSA ch. 162-H. Under RSA 162-H:4, III (1994), EFSEC

> may delegate the authority to monitor the construction or operation of any energy facility granted a certificate under this chapter to such state agency or official represented on the committee as it deems appropriate, but, subject to RSA 162-H:10, it may not delegate authority to hold hearings, issue certificates, determine the terms and conditions of a certificate, or enforce a certificate.

■ The record shows that EFSEC evaluated State agency recommendations and then made the ultimate decision as to the terms and conditions of the certificate. The fact that EFSEC imposed additional terms and conditions when State agency recommendations were not comprehensive demonstrates that EFSEC did not delegate its authority to determine the certificate's terms and conditions. Thus, we hold that LNC has failed to show that the process employed by EFSEC violated RSA 162-H:4, III or was otherwise unjust or unreasonable.

LNC next argues that EFSEC's analysis and approval of required pollution controls was insufficient and premature in violation of RSA 162-H:16, IV(c) (1994), which requires EFSEC to find that the site and facility "[w]ill not have an unreasonable adverse effect on aesthetics, historic sites, air and water quality, the natural environment, and public health and safety." LNC contends that EFSEC approved the wrong air pollution technology for AES's facility in violation of RSA 162-H:16, IV(c).

■ EFSEC selected "SCR technology" over "SCONOx technology" based on the reliability and past success of SCR technology and determinations by the DES and the Environmental Protection Agency (EPA) that SCR technology was the "best available technology" for the proposed facility. EFSEC also relied on conclusions by the DES and EPA that SCONOx technology was not yet available and had not been demonstrated to be technically feasible for a facility such as the one proposed by AES. Since the record supports EFSEC's decision, we are not satisfied by a clear preponderance of the evidence that EFSEC's decision will have an unreasonable adverse effect on air and water quality in violation of RSA 162-H:16, IV(c).

■ LNC's fourth argument is that EFSEC erred in failing to include a monitoring requirement in the certificate concerning ground-level fogging or icing conditions. "A certificate of site and facility may contain such reasonable terms and conditions as the committee deems necessary and may provide for such reasonable monitoring procedures as may be necessary." RSA 162-H:16, VI. The evidence presented to EFSEC, including the testimony of two cooling tower engineers, overwhelmingly indicated that the operation of the facility would not cause any ground level fogging or icing problems. Accordingly, we cannot conclude by a clear preponderance of the evidence that EFSEC's decision was unjust or unreasonable. *See* RSA 541:13.

Lastly, LNC argues that EFSEC improperly ignored a non-binding referendum vote from Londonderry residents opposing the AES facility. Londonderry residents voted on March 9, 1999, fifty-five percent to forty-five percent (hardly an overwhelming mandate), against AES's construction of a natural-gas power facility in Londonderry. The Town of Londonderry (Town) filed a brief in this court to point out that although the previous Londonderry Town Council supported the AES project, the newly elected town council opposes the project.

■ Pursuant to RSA 162-H:16, IV(b), EFSEC is required to give due consideration "to the views of municipal and regional planning commissions and municipal governing bodies" before issuing a certificate. Although EFSEC relied in part on the fact that the previous town council supported the project, the committee also weighed the result of the non-binding referendum against the views expressed by the many interested local and regional planning commissions and governing bodies that favored the project. Since the record indicates that EFSEC gave due consideration to the views of municipal and regional planning commissions and municipal

governing bodies as required under RSA 162-H:16, IV(b), we hold that LNC has not demonstrated that EFSEC's decision was unjust or unreasonable.

*Affirmed.*

BROCK, C.J., and HORTON and BRODERICK, JJ., did not sit; GRAY, J., retired superior court justice, and MCHUGH and GROFF, JJ., superior court justices, sat by special assignment under RSA 490:3; all who sat concurred.

Justices who did not sit did not, following oral argument, participate in discussions, decisions, votes, or preparation of the opinion in any way.