Cheshire
No. 2010-167

GOLF COURSE INVESTORS OF NH, LLC

v.

TOWN OF JAFFREY & a.

Argued: November 10, 2010
Opinion Issued: April 12, 2011

*William S. Gannon PLLC*, of Manchester (*William S. Gannon* on the brief and orally), for Golf Course Investors of NH, LLC.

*Bragdon & Berkson, P.C.*, of Keene (*Kelly E. Dowd* on the brief and orally), for the Town of Jaffrey and Town of Jaffrey Zoning Board of Adjustment.

CONBOY, J. The Town of Jaffrey (Town) and the Town of Jaffrey Zoning Board of Adjustment (ZBA) appeal the order of the Superior Court (*Arnold,* J.) vacating the ZBA's decision granting the appeal of certain residents of the Town from decisions of the Town of Jaffrey Planning Board (planning board). The trial court ruled that the residents lacked standing to appeal the planning board's decisions granting major subdivision and site plan approvals to Golf Course Investors of NH, LLC (GCI). We affirm.

The following facts are drawn from the record. With the planning board's approval, GCI subdivided its single 9.13 acre parcel into two lots, one consisting of 7.39 acres, and the other of 1.75 acres (Lot 8.9) containing the building at issue. The approval of the subdivision was not appealed. GCI subsequently submitted a major subdivision application, seeking to convert the building on Lot 8.9, the Shattuck Inn Annex, into a four-unit condominium. It also submitted a site plan application, proposing the condominium conversion with two detached garages. The planning board voted that a special exception was not required to allow the proposed four-unit condominium. It accepted the major subdivision and site plan applications and conducted a public hearing.

Planning board member Don MacIsaac recused himself from participating in the board's review of the applications. He is identified in the minutes as an abutter, and the certified record demonstrates that the Town sent notice of the public hearing to "MacIsaac Trust c/o Donald & Patricia MacIsaac." During the hearing, Mr. MacIsaac expressed some road safety concerns, and Mrs. MacIsaac asked questions about the proposed use of an existing driveway, as well as the intended access to a nearby golf course "by maintenance people on carts." The minutes reflect that GCI's plan was to restore the existing Annex building, which apparently has historical value, by extending the front porch, constructing two porches in the back with "similar character" to existing back porches, and painting the exterior cedar with solid stain. The plan also included constructing two detached garages. The planning board approved the major subdivision and site plan applications with conditions.

Seven residents — Richard and Heather Ames, James and Sara Bacon, Allon and William Blackwell, and Patricia MacIsaac — appealed the planning board's decisions to the ZBA. They stated:

> [W]e believe the Planning Board erred in its interpretation of the zoning regulations regarding the lot size for a major subdivision and in its decision that the plan did not need to come before the [ZBA] for Special Exceptions. Under RSA Chapter 675, we therefore appeal the Planning Board's April 11, 2006 decision — allowing four dwelling units in the Mountain Zone on a plot of only 1.75 acres — to the [ZBA].

The residents contended that "[s]tandard zoning in the Rural District and Mountain Zone requires at least 6 acres for four units with town water, or at least 4.8 acres for an Open Space Development Plan for four units with town water," and that "[i]f the Shattuck Annex were a standard ownership project in the Mountain Zone, it would require Special Exceptions for a major development and for a multi-family dwelling and approval for an Open Space Development Plan (OSDP), which is the only way to allow multi-family housing in the Mountain Zone." They requested that the ZBA overturn the planning board decisions and direct it to rehear the case, asserting that, "Upon rehearing, we believe that a revised proposal on at least 4.8 acres of platted land could be readily approved by the Planning Board as an Open Space Development Plan, assuming prior Planning Board referral to and approval by the Board of Adjustment of the necessary Special Exceptions for a major subdivision and multi-family dwelling in the Mountain Zone." They also stated, "We are pleased that the Shattuck Inn Annex, gutted and unused for many years, has been proposed by [GCI] to be redeveloped into attractive housing," and "We believe the resulting redevelopment of the Shattuck Annex as four dwelling units on a plot of at least 4.8 acres will be a very good reuse of this historic 1912 building, which is an example of Shingle Style Architecture."

Under a section in their appeal document entitled "AGGRIEVED PERSONS," the residents identified their respective properties' location in relation to the mountain zone and Lot 8.9. They stated that the Ames' property "abuts land in the Mountain Zone and [its] northwest property boundary is approximately 900 feet from Lot 8.9"; the Bacons' property fronts "the same side of Dublin Road as Lot 8.9 about 2400 feet from Lot 8.9"; and the Blackwells' property is located in the mountain zone and "is about 1200 feet from Lot 8.9 fronting on the opposite side of Dublin Road." With respect to Patricia MacIsaac, the appeal document states that she "was identified by the Planning Board as an abutter" and her property "is located across Dublin Road . . . approximately 450 feet from Lot 8.9."

On June 6, 2006, the ZBA held a public hearing on the residents' appeal. GCI raised the issue of whether the residents had standing to appeal the planning board's decisions as "persons aggrieved." *See* RSA 676:5, I (Supp. 2010). It asserted that living close to the project or having a general interest in the proper enforcement of town ordinances and regulations is not enough to be "aggrieved," and pointed out that the residents stated that they actually favored the project. With respect to the issue of standing, Town counsel noted that, of the residents, only Patricia MacIsaac attended and participated in the planning board proceedings. The minutes of the hearing also state the following:

> [Town counsel] read RSA 672:3 which defines an abutter. To his knowledge none of the four properties adjoin or are directly across the street or stream from the land under consideration. Another consideration would be do they have a direct issue; whether they can demonstrate that their land will be directly affected by the proposal under consideration. In the petition they identify themselves as aggrieved and they stop — they do not go on to say how their properties are affected by this. They do say however that they like the proposal itself.

During the hearing, the residents related their concern that the planning board erroneously allowed "too much housing, being four condominium units, on too little land, being 1.75 acres, within the rural/mountain zone." The ZBA closed the public hearing, expecting to begin deliberations on June 20.

At the commencement of its June 20 deliberative session, the ZBA addressed the issue of standing. The minutes of that session state the following:

> The board reviewed the State's definition of abutter. Chairman Dumont did not feel that any of the appellants qualified as an abutter. Member Weber commented that the State has regional impact going as far as Marlborough. The appellants are closer than Marlborough.

> Member Dodge asked [Town counsel] for an explanation on who can and cannot appeal a decision. [Town counsel] explained that the definition of abutter is for notice purposes and you do not have to be an abutter to be an aggrieved party. The issue here is whether or not the parties who issued the appeal are aggrieved.

> Chairman Dumont noted that three of the four appellants did not attend the Planning Board public hearing and asked how ag-

grieved could they be? There are two choices. The board can either deny the appeal and go with what the Planning Board said was correct or the appeal can be granted and returned to the Planning Board. If the second option takes place it will most likely generate an application for a special exception.

Without any further discussion described in the minutes, the ZBA voted that the residents were "aggrieved." It also voted to grant the appeal "on the basis that a special exception to allow a multi-family use is required." GCI unsuccessfully sought a rehearing from the ZBA, and then appealed to the superior court. The trial court bifurcated the matter, first addressing the jurisdictional issue of standing. It ruled that the residents lacked standing to bring their appeal before the ZBA, and vacated the ZBA's decision granting the appeal and reversing the planning board's decision. This appeal followed.

As a preliminary matter, we will assume, without deciding, for purposes of this appeal that the Town has standing to challenge the trial court's decision regarding the standing of the residents and therefore we address the Town's arguments on the merits. *See S. N.H. Med. Ctr. v. Hayes*, 159 N.H. 711, 715 (2010); *Stuart v. State*, 134 N.H. 702, 704 (1991).

The Town argues that the trial court erred "in finding that standing is a legal conclusion rather than a factual judgment," "in substituting its judgment for that of the ZBA," and "in failing to accord the presumption of validity to the determination of the ZBA." It further contends that "the record is clear that the determination of the ZBA was reasonable and in accordance with existing New Hampshire case law." It points out that one of the residents, Patricia MacIsaac, was cited as an abutter by the planning board for notice purposes, that two residents live within 1,000 feet and the others live within 2,400 feet from Lot 8.9, that the proposed change "was the creation of a major subdivision on a 1.75 acre lot," and that at least one of the residents participated in the planning board proceedings.

GCI argues that the trial court properly found that the ZBA's ruling on standing was not supported by the record and that, based upon the undisputed facts, the residents lacked standing as a matter of law. It contends that the Town identifies in its brief certain facts that are not part of the certified record, and that "[n]owhere in the Zoning Appeal [do the residents] claim or even hint that converting the Annex to four (4) single-family residential condominiums will affect their health, general welfare, safety, the value of their properties, impose any other pecuniary damage not shared by all persons in the community or impact some other direct definite and immediate interest in the outcome." (Quotations omitted.) According to GCI, the residents' appeal was based only upon "an

academic debate regarding the interpretation of the ordinance and regulations," and that at "most" their appeal asserted that "conversion of an existing building into 4 single-family residential condominium units, without any expansion, would be 'too much housing' in the 'mountain zone . . . designed to protect and preserve the rural and scenic beauty of Mount Monadnock and the associated highlands.'"

▇ To have standing to appeal to the ZBA, the residents must have been "aggrieved" by the planning board's decisions approving the major subdivision and site plan applications without requiring GCI to obtain a special exception. *See* RSA 676:5, I; *Goldstein v. Town of Bedford*, 154 N.H. 393, 395 (2006). "Persons aggrieved" include any person "directly affected" by the challenged administrative action or proceeding. RSA 677:2 (Supp. 2010); RSA 677:4 (Supp. 2010); *see Goldstein*, 154 N.H. at 395. The appealing party must show some direct, definite interest in the outcome of the action or proceeding. *Goldstein*, 154 N.H. at 395. To determine whether a non-abutter has a sufficient direct, definite interest to confer standing, the trier of fact may consider factors such as the proximity of the challenging party's property to the site for which approval is sought, the type of change proposed, the immediacy of the injury claimed, and the challenging party's participation in the administrative hearings. *Weeks Restaurant Corp. v. City of Dover*, 119 N.H. 541, 544-45 (1979); *Johnson v. Town of Wolfeboro Planning Bd.*, 157 N.H. 94, 99 (2008).

▇ Whether a person's interest in the challenged administrative action is sufficient to confer standing is a factual determination to be undertaken on a case by case basis. *See Goldstein*, 154 N.H. at 395-96. While the factual findings of the ZBA regarding standing are deemed *prima facie* lawful and reasonable, *see* RSA 677:6 (2008), the decision on standing may be subject to *de novo* review when the underlying facts are not in dispute. *See Johnson*, 157 N.H. at 96; *Joyce v. Town of Weare*, 156 N.H. 526, 529 (2007). Further, when the issue of standing is raised, the party challenging the administrative action cannot rest on unsubstantiated allegations, but must sufficiently demonstrate his or her right to claim relief. *Joyce*, 156 N.H. at 529. Standing will not be extended to "all persons in the community who might feel that they are hurt by" the administrative action. *Goldstein*, 154 N.H. at 395 (quotation omitted).

Our review of the trial court's decision regarding the ZBA's ruling on standing is limited; we will uphold it unless it is unsupported by the evidence or legally erroneous. *Fox v. Town of Greenland*, 151 N.H. 600, 603 (2004); *Feins v. Town of Wilmot*, 154 N.H. 715, 717 (2007). We are mindful that the party who seeks to have the trial court set aside the ZBA decision bears the burden of showing that such decision is unlawful or unreasonable.

*See* RSA 677:6; *Feins*, 154 N.H. at 717. Further, in the appeal to the trial court, "[a]ll findings of the zoning board of adjustment . . . upon all questions of fact properly before the court shall be prima facie lawful and reasonable." RSA 677:6. The trial court is precluded from setting aside or vacating a zoning board decision "except for errors of law, unless the court is persuaded by the balance of probabilities, on the evidence before it, that said order or decision is unreasonable." *Id.*

Here, the trial court, while aware of its obligation to accept the ZBA's factual findings as *prima facie* lawful and reasonable, determined that

> the ZBA did not make any factual findings regarding standing, because the facts relevant to this determination were not in dispute. There was no dispute that most of the residents who were appealing the planning board decision had not attended the board's meetings. Nor was there a dispute regarding the proximity of the residents' properties to the proposed development site. There was no allegation of any injury to the residents, let alone a dispute regarding the nature or extent of such injury. Instead of making factual findings, the ZBA simply concluded that the residents were aggrieved. It appears the ZBA made this ruling so that it could render a decision on the merits of the appeal.

Thus, the trial court decided, it was "not obligated to defer to the ZBA's erroneous conclusion of law."

It also determined that the ZBA's ruling that the residents were "persons aggrieved" was not supported by the record. After review of the certified record, the trial court remarked that "all of the residents involved in the appeal lived within approximately 2,400 feet of the lot [GCI] sought to subdivide," the residents "did not identify any injury they would face as a result of the planning board's approvals," and only one of the residents attended the planning board hearing. Ultimately, it concluded, "It seems the residents' interest in this case was limited to a general interest in preventing the planning board from approving plans that would violate the town's zoning ordinance," and ruled that this general interest is not sufficient to confer standing.

We discern no error in the trial court's decision to overturn the ZBA's determination. *See Malachy Glen Assocs. v. Town of Chichester*, 155 N.H. 102, 109 (2007). In concluding that the residents were aggrieved by the planning board's decisions, the ZBA neither rendered factual findings nor resolved any factual disputes, either implicitly or explicitly. Rather, the residents' appeal document and the ZBA minutes reflect undisputed facts regarding the proximity of the residents' property to that of GCI, the size

of GCI's lot 8.9, the proposed changes to the Annex building, and the extent of the residents' participation in the planning board hearing. The residents neither asserted, nor presented evidence supporting, particularized harm to them that would result from this project. Although standing is typically a factual question resolved on a case by case basis, *see Goldstein*, 154 N.H. at 395-96, and ZBA findings are afforded deference, *see* RSA 677:6, the trial court is not compelled to defer to a legally erroneous conclusion. *See* RSA 677:6 (trial court can set aside a ZBA decision for "errors of law"). We conclude that the trial court did not err when it conducted a *de novo* review to determine as a matter of law whether the undisputed facts in the record could support a finding that the residents were aggrieved by the planning board's decisions. *See Johnson*, 157 N.H. at 96; *Joyce*, 156 N.H. at 529. Further, assessing the record in light of the factors identified in *Weeks*, 119 N.H. at 545, we conclude that the trial court did not err in determining that the ZBA's conclusion that the residents were aggrieved is not supported by the record.

Regarding proximity, the residents' respective properties are located between approximately 450 feet and 2,400 feet from the project site. While the Town points out that Patricia MacIsaac was cited as an abutter for notice purposes in the proceeding before the planning board, it does not contend that she actually was one. Indeed, the residents' appeal document itself recognizes that she is not an actual abutter by describing her property as located across Dublin Road approximately 450 feet from Lot 8.9. Further, the ZBA minutes reflect that the ZBA chair "did not feel any of the appellants qualified as an abutter," and nothing in the minutes suggests that the ZBA afforded her standing as an abutter.

█ We disagree with the Town's contention that we held in *Towle v. Nashua* that "an adjoining land owner had standing to appeal whether or not he or she was an abutter for notice purposes, based on the presumption of a direct pecuniary interest in land use changes by neighbors." In *Towle*, we held that city residents had standing to appeal the validity of an amending ordinance which rezoned a residential district to that of general business. *Towle v. Nashua*, 106 N.H. 394, 396 (1965). We rejected the contention that because the residents did not live within the geographical parameters of the rezoned district as set forth under former RSA 675:5, they lacked standing to appeal; we considered the residents' physical proximity to the redistricted area. *See id.* ("Persons entitled to protest by reason of ownership of property in, or adjoining, or across from, an area sought to be rezoned may be thought to have a direct pecuniary interest in the change."). However, we did not adopt a bright line rule identifying whether and to what extent physical proximity establishes direct interest

sufficient to confer standing. *Id.* In *Weeks,* decided fourteen years after *Towle,* we set forth factors to be considered in determining whether a non-abutter has demonstrated a direct, definite interest sufficient to confer standing to appeal a planning board or zoning board decision. *Weeks,* 119 N.H. at 544-45. Physical proximity is but one of those factors. *See id.* at 545. Therefore, while close proximity is relevant, we reject the notion suggested by the Town that a non-abutter necessarily establishes a direct, definite interest by close proximity alone. *See id.*

Regarding the type of change proposed, the record indicates that GCI does not intend to dramatically alter the footprint of the existing Annex building or its visual character. Indeed, in the appeal document, the residents expressed their approval of the intended improvements to the existing Annex building, and the proposed conversion of the Annex building to a four-unit condominium. Their objection exclusively focused upon allowing such conversion to occur on a smaller parcel than allegedly required by the zoning regulations. Further, with respect to the immediacy of the injury claimed, the trial court correctly concluded that the residents "did not identify any injury they would face as a result of the planning board's approvals." They identified no injury that their particular properties would incur in the event the project is completed on the 1.75 acre lot rather than on a 4.8-acre lot. Rather, the residents essentially sought to generally protect open space in the mountain zone through what they saw as proper application of the zoning regulations.

In its brief, the Town asserts:

> The [residents] argued that the subdivision proposed is an unprecedented development apparently set up to "game" the Jaffrey Land Use Plan, which is intended to encourage Open Space Development in the Mountain Zone. The [residents] suggest that approval of the project without additional land set aside as open space would result in overcrowding and over-commercialization of the Mountain Zone. Presumably, the injury to the [residents] would be the impacts of noise and traffic and potential diminution of property values due to overdevelopment.

On this record, these assertions amount to unsubstantiated suppositions. *See Joyce,* 156 N.H. at 529 (party challenging an administrative action cannot rest on unsubstantiated allegations to establish standing). Converting the existing building into a four-unit condominium presumably will cause some increase in traffic and noise. However, in the face of their express approval of this converted use, the residents did not allege, much less identify, any harm to them which would result from increased traffic and noise. Additionally, while allowing a four-unit dwelling on a parcel

smaller than otherwise allegedly required could affect the preservation of open space, there is nothing in the certified record evidencing that the residents demonstrated to the ZBA that the project on a 1.75 acre lot, rather than a 4.8 acre lot, would result in overcrowding, or increased traffic and noise, causing *direct, definite injury to them*. In short, the trial court correctly determined that there was a complete lack of evidence concerning the nature and extent of any injury to the residents' respective properties, and that the residents alleged no more than a general interest in preventing the planning board from approving plans that would violate the Town's zoning ordinance. *See Goldstein*, 154 N.H. at 395 (standing not extended to "all persons in the community who might feel that they are hurt by" the administrative action).

Finally, aside from Patricia MacIsaac, none of the residents participated in the planning board proceedings, and MacIsaac's involvement was *de minimis*. The minutes reflect that she questioned only the intended use of an existing driveway and the intended access to a nearby golf course by "maintenance people on carts."

Considering all of the *Weeks* factors, we conclude that the Town has failed to demonstrate that the trial court's decision is unsupported by the evidence or legally erroneous. *Cf. Price v. Planning Board*, 120 N.H. 481, 484 (1980) (non-abutters had standing where they participated in planning board proceedings and the proposed project was located across the street, constituted a significant change in use from undeveloped open space to subdivision with single-family dwellings and interfered with non-abutter's use of right of way); *Thomas v. Town of Hooksett*, 153 N.H. 717, 719-21 (2006) (non-abutters had standing where they owned a gas station within one thousand feet of proposed gas station and within conservation district and had extensively participated in zoning board proceedings); *Johnson*, 157 N.H. at 96-100 (non-abutters had standing where proposed project constituted a significant change to dimensions and use of existing structure in a protected district, planning board had repeatedly denied applications to construct much less significant structures in the protected district, and non-abutters lived within two hundred feet of the proposed project, participated actively at the planning board hearing, and alleged that new structure would interfere with the use and enjoyment of their property).

*Affirmed.*

DALIANIS, C.J., and DUGGAN and HICKS, JJ., concurred.