Hillsborough-northern judicial district
No. 2011-611

## HANNAFORD BROTHERS COMPANY

v.

## TOWN OF BEDFORD & a.

Argued: January 10, 2013
Opinion Issued: April 25, 2013

*Cleveland, Waters and Bass, P.A.*, of Concord (*David W. Rayment* and *Mark S. Derby* on the brief, and *Mr. Rayment* orally), for the petitioner.

*Upton & Hatfield, LLP*, of Concord (*Barton L. Mayer* and *Matthew R. Serge* on the joint brief, and *Mr. Mayer* orally), for the Town of Bedford and Town of Bedford Zoning Board of Adjustment.

*Gallagher, Callahan & Gartrell, PC*, of Concord (*Ari B. Pollack* and *Samantha D. Elliott* on the joint brief, and *Ms. Elliott* orally), for the intervenor, Retail Management and Development, Inc.

CONBOY, J. The petitioner, Hannaford Brothers Company, appeals an order of the Superior Court (*Tucker*, J.) dismissing its appeal from a decision of the Town of Bedford Zoning Board of Adjustment (ZBA) for lack of standing. *See* RSA 677:4 (Supp. 2012). We affirm.

The following facts are undisputed. The petitioner owns and operates a 36,541 square foot supermarket on Route 101 in Bedford's commercial district. The petitioner obtained planning board approval for its supermarket in November 2006, shortly after the Town of Bedford (Town) enacted a zoning ordinance amendment restricting the size of any single building in the commercial district to 40,000 square feet. Retail Management and Development, Inc. (RMD), the intervenor in this case, develops supermarkets for Demoulas Super Markets, Inc. In November 2010, RMD filed an application with the ZBA seeking a variance to exceed the 40,000 square foot restriction in order to construct a 78,332 square foot supermarket on Route 114 in the commercial district. The location of RMD's proposed supermarket is 3.8 miles from the petitioner's supermarket.

Although the petitioner objected to the variance application, the ZBA granted it. The ZBA found, among other things, that the "spirit of the ordinance" was intended to limit the size of buildings on Route 101, but not on Route 114, where RMD sought to build. In doing so, it accepted RMD's arguments that: the area on Route 101 where the petitioner's property is located cannot support buildings with a footprint larger than 40,000 square feet due to the limited depth of the commercial zone along Route 101; there was a desire to maintain the "rural character" of the area and to avoid "massing," or visual takeover of the area; and RMD's seventeen-acre parcel on Route 114 is a "unique piece" of commercially zoned land surrounded by industrial properties. The ZBA denied the petitioner's motion for rehearing, finding that the petitioner was not a "person directly affected" by its decision and, thus, lacked standing to move for rehearing. *See* RSA 677:2 (Supp. 2012).

The petitioner appealed to the superior court under RSA 677:4, which allows appeal by "[a]ny person aggrieved by any order or decision of the zoning board of adjustment." The Town and RMD moved to dismiss the petitioner's appeal, arguing that the petitioner lacked standing under RSA 677:4. The trial court granted the motion, and this appeal followed.

■■ The petitioner argues that the trial court erred in dismissing its appeal based upon a lack of standing. When a motion to dismiss challenges a petitioner's standing to sue, the trial court must look beyond the

petitioner's allegations and determine, based on the facts, whether the petitioner has sufficiently demonstrated its right to claim relief. *Johnson v. Town of Wolfeboro Planning Bd.*, 157 N.H. 94, 96 (2008). Under RSA 677:4, "[a]ny person aggrieved" by an order of a zoning board of adjustment may petition the superior court for review. A " 'person aggrieved' includes any party entitled to request a rehearing under RSA 677:2." RSA 677:4. Under RSA 677:2, a person entitled to apply for rehearing includes "any party to the action or proceedings, or any person directly affected thereby." Here, the petitioner does not argue that it has standing as a "party to the action"; thus, we consider whether the petitioner is a "person directly affected" by the ZBA's decision. To prove that it is a "person directly affected" for standing purposes, the appealing party must show "some direct, definite interest in the outcome of the action or proceeding." *Golf Course Investors of NH v. Town of Jaffrey*, 161 N.H. 675, 680 (2011).

█ "Whether a person's interest in the challenged administrative action is sufficient to confer standing is a factual determination to be undertaken on a case by case basis." *Id.* When evaluating whether an appealing party has standing in this context, we consider the following factors: (1) the proximity of the challenging party's property to the subject site; (2) the type of change proposed; (3) the immediacy of the injury claimed; and (4) the challenging party's participation in the administrative hearings. *See Weeks Restaurant Corp. v. City of Dover*, 119 N.H. 541, 545 (1979). This list is not exhaustive; we also consider any other relevant factors bearing on whether the appealing party has a direct, definite interest in the outcome of the proceeding. *See id.* at 544-45. We generally review the trial court's factual findings deferentially, *see Richmond v. Hutchinson*, 149 N.H. 749, 751 (2003); however, where, as here, "the underlying facts are not in dispute, we review the trial court's [standing] determination *de novo*." *Johnson*, 157 N.H. at 96.

We begin by evaluating the undisputed facts in light of the *Weeks* factors. First, the petitioner concedes that because it is located 3.8 miles away from RMD's development site, it lacks proximity. Regarding the "type of change proposed" by RMD, there is no question that it is substantial: it seeks to construct a building nearly double the 40,000 square foot restriction. Thus, the second factor weighs in the petitioner's favor. Further, because the petitioner actively participated in the initial ZBA hearings, the fourth factor weighs in its favor. *See Weeks*, 119 N.H. at 545.

█ The petitioner focuses its argument on the third *Weeks* factor — "immediacy of the injury claimed," *id.* — as to which it advances two arguments. The petitioner first argues that the ZBA and RMD conferred standing upon it by "directly referencing and implicating [the petitioner's]

business interests, property interests and development rights." Specifically, the petitioner points out that when considering the "spirit of the ordinance" requirement for granting a variance, see RSA 674:33, I(b) (Supp. 2012), the ZBA drew a comparison between the petitioner's location on Route 101 and RMD's proposed location on Route 114, finding that the ordinance was intended to limit the size of buildings on Route 101 but not on Route 114. The petitioner argues that "because this comparison occurred in the context of the 'spirit of the ordinance' " analysis (rather than the "unnecessary hardship" analysis based upon the property's unique physical conditions, see *Chester Rod & Gun Club v. Town of Chester*, 152 N.H. 577, 580 (2005)), the ZBA created a policy-setting and precedential interpretation that "will form the basis of future determinations about variances from the 40,000 square foot requirement," thereby limiting the petitioner's "operations and future expansion options."

██ We disagree that the ZBA's comparison of the petitioner's location in the district to RMD's proposed location establishes sufficient injury to confer standing. To accept the petitioner's argument would disregard our statutory mandate to limit standing to persons "directly affected" by the ZBA's decision. *See* RSA 677:2, :4. In evaluating any petition for a variance, the ZBA is required to determine whether the proposal complies with the "spirit of the ordinance." *See* RSA 674:33, I(b)(2). "[F]or a variance to be . . . inconsistent with the spirit of the ordinance, its grant must violate the ordinance's basic zoning objectives." *Harborside Assocs. v. Parade Residence Hotel*, 162 N.H. 508, 514 (2011) (quotation omitted). "[O]ne way to ascertain whether granting the variance would violate basic zoning objectives is to examine whether it would alter the essential character of the locality." *Farrar v. City of Keene*, 158 N.H. 684, 691 (2009) (quotation omitted). Thus, one of the accepted ways for the ZBA to accomplish its task of evaluating the merits of RMD's variance petition is to consider the character of the locality.

██ ██ Under the petitioner's rationale, *any* property owner within the zoning district whose property is considered in the ZBA's evaluation of the "character of the locality" would have standing to appeal. This is not the state of our law. "[W]hen the issue of standing is raised, the party challenging the administrative action . . . must sufficiently demonstrate his or her right to claim relief" by demonstrating "some direct, definite interest in the outcome of the action or proceeding." *Golf Course Investors*, 161 N.H. at 680. "Standing will not be extended to all persons in the community who might feel that they are hurt by a local administrator's decision." *Goldstein v. Town of Bedford*, 154 N.H. 393, 395 (2006) (brackets and quotation omitted). The ZBA identified a characteristic of RMD's property

that it found made a variance consistent with the spirit of the ordinance: its location on Route 114. In the process, the ZBA also identified a feature of the petitioner's property that may make it less likely to obtain a variance should it apply for one in the future: its location on Route 101. At most, the petitioner had only a generalized interest in the outcome of the ZBA proceedings. Such generalized interest is insufficient to confer standing. *See, e.g., Nautilus of Exeter v. Town of Exeter*, 139 N.H. 450, 451-52 (1995) (rejecting petitioners' argument "that their status as citizens of the town, property owners, taxpayers, and owners of a business within the commercial district gave them standing to raise issues concerning the proper application and use of zoning districts," concluding that the only adverse impact on petitioners was increased business competition).

■ Indeed, to have standing, a party is required to identify an "injury that [its] particular propert[y] would incur" as a result of the administrative decision. *See Golf Course Investors*, 161 N.H. at 683; *see also Appeal of Londonderry Neighborhood Coalition*, 145 N.H. 201, 203 (2000) ("In order to have standing to appeal a decision of an administrative agency denying a motion for rehearing, an appellant must demonstrate that the appellant has suffered or will suffer an injury in fact."). The petitioner argues that the ZBA's interpretation will directly affect its operations and *future* expansion options; yet, it does not specify when or even if it actually intends to expand its supermarket beyond 40,000 square feet. Thus, the petitioner's claimed injury is, at most, "speculative," and "does not give rise to a 'definite' interest in the outcome of th[e] appeal." *Joyce v. Town of Weare*, 156 N.H. 526, 530 (2007).

■ The petitioner also argues that it has suffered a direct injury because the ZBA's decision allows for "unfair or illegal" competition. The petitioner acknowledges that "increased" business competition is not a type of harm sufficient to confer standing. *See Nautilus*, 139 N.H. at 452; *see also Weeks*, 119 N.H. at 545 ("[I]njury resulting from competition is rarely classified as a legal harm but rather is deemed a natural risk in our free enterprise economy."). In arguing that this case presents an issue of unfair or illegal competition, the petitioner draws the following distinction: increased competition from a conforming 40,000 square foot business in the district would not confer standing; however, competition from a 78,332 square foot supermarket under an illegally-granted variance from a generally-applicable zoning restriction does confer standing.

■ The petitioner's argument is unavailing. The petitioner contends that its injury stems from unfair or illegal competition by RMD. What makes the competition unfair or illegal, according to the petitioner, is that

the ZBA granted RMD a variance from a "generally-applicable" zoning ordinance. Yet, a variance by definition grants authority to the owner to use its property in a manner that otherwise contravenes generally-applicable zoning ordinances. *See New London v. Leskiewicz*, 110 N.H. 462, 466 (1970). In effect, the petitioner argues that any business should be permitted to challenge the validity of any ZBA decision to grant a variance to a competitor. This argument improperly conflates the merits of an appeal with the standing requirement: according to the petitioner, because it alleges that the ZBA's decision is unlawful, it has standing to appeal. We reject such a standard. *See Weeks*, 119 N.H. at 545 (whether an appealing party is a "proper party" is a question "separate from the merits of the appeal"). An appeal of a ZBA decision is not a weapon to be used to stifle business competition. *See Nautilus*, 139 N.H. at 452. Thus, the petitioner fails to allege any concrete injury to its particular property, and the third *Weeks* factor weighs against standing.

Although the second and fourth *Weeks* factors weigh in favor of standing, we conclude that because the petitioner lacks proximity and has failed to allege any concrete injury to its particular property as a result of the ZBA's determination, the *Weeks* factors, on balance, do not support the petitioner's standing to appeal.

In addition to the *Weeks* factors, we also consider any other factors relevant to evaluating whether the petitioner has a direct, definite interest in the outcome. *See Weeks*, 119 N.H. at 544-45. Here, the petitioner asserts two additional grounds in support of its standing argument. First is its claim under the State Constitution's Equal Protection Clause and RSA 674:20 (2008). The petitioner argues that under these provisions, it has a direct interest in seeing that zoning regulations relating to the commercial district are applied even-handedly, so that all property owners in the commercial district stand on equal footing. We disagree.

■ "An equal protection challenge to an ordinance is an assertion that the government impermissibly established classifications and, therefore, treated similarly situated individuals in a different manner." *Taylor v. Town of Plaistow*, 152 N.H. 142, 146 (2005) (brackets omitted). Similarly, RSA 674:20 provides, "All regulations shall be uniform for each class or kind of buildings throughout each district." The trial court rejected the petitioner's argument on the ground that the petitioner was not "similarly situated" to RMD because "it never applied for a variance from the limitation on square footage." The petitioner argues that it need not show that it applied for a variance to be "similarly situated."

■ Whether the petitioner is "similarly situated," however, is relevant only to the merits of the petitioner's claim and does not address the

threshold issue of standing. In other words, merely alleging violations of the Equal Protection Clause and RSA 674:20 does not confer standing to challenge the ZBA's decision. There is no provision in RSA 674:20 relieving the petitioner from its burden to prove standing under RSA 677:4. Even when a constitutional challenge is alleged, an appealing party must prove that its "own personal rights have been or will be *directly and specifically affected.*" *Appeal of Richards*, 134 N.H. 148, 154 (1991) (emphasis added); *see also Joyce*, 156 N.H. at 529.

The petitioner has failed to show how the ZBA's decision has directly and specifically affected its own rights. It asserts only that it has a right to ensure that all owners in the district "stand on an equal footing." In *Golf Course Investors*, we rejected a similarly broad argument, finding that residents do not have standing to prevent an administrative body from approving plans on the basis that, in the residents' view, the plans would violate a Town ordinance. *See Golf Course Investors*, 161 N.H. at 684.

The petitioner contends that if it does not have standing to appeal under the Equal Protection Clause or RSA 674:20, then "no person within a zoning district could challenge a zoning ordinance which was applied in a discriminatory manner." We disagree. Simply because the petitioner fails to sustain its burden to prove standing does not mean that others in the district would not be able to challenge ordinances applied in a discriminatory manner. So long as an appealing party can establish a direct injury to its own property or rights, that party will have standing to assert a challenge. *See Appeal of Richards*, 134 N.H. at 154.

 Finally, the petitioner contends that it has standing because the ZBA acted in a "quasi-judicial capacity" when it granted RMD a variance. It distinguishes a zoning board of adjustment's role in considering a variance request from a planning board's role in evaluating site plans. It maintains that "when granting a variance, a zoning board is by definition establishing the relative rights of similarly-situated parties in the same zone, and setting precedent for future action." Assuming that there is any meaningful distinction, for standing purposes, between a zoning board of adjustment's role in considering variance requests and a planning board's role in evaluating site plans, *but see Weeks*, 119 N.H. at 544 ("The interests of the parties and the type of issues presented in a site plan review do not differ substantially from those present in the granting of a special exception or a variance, and no rationale appears for a different definition of persons entitled to appeal."), the petitioner again has not identified any direct interest in the outcome of the ZBA's decision. By its own admission,

the petitioner is concerned only with possible "future action." This indefinite interest does not support standing to appeal the ZBA's determination. *See Joyce*, 156 N.H. at 530.

Based upon the foregoing, we conclude that the petitioner has failed to demonstrate that it has a "direct, definite interest in the outcome of the [ZBA's] action," *Golf Course Investors*, 161 N.H. at 680; thus, it lacks standing to appeal the ZBA's decision under RSA 677:4. Accordingly, we hold that the trial court did not err in granting the joint dismissal motion of the Town and RMD.

*Affirmed.*

DALIANIS, C.J., and HICKS, LYNN and BASSETT, JJ., concurred.