J-S17025-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| RAMEL M. MOSLEY | |
| Appellant | No. 1058 MDA 2019 |

Appeal from the Judgment of Sentence entered March 28, 2019
In the Court of Common Pleas of Luzerne County
Criminal Division at No: CP-40-CR-0001631-2017

BEFORE: PANELLA, P.J., STABILE, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY STABILE, J.: **FILED JULY 08, 2020**

Appellant, Ramel M. Mosley, appeals from the judgment of sentence imposed in the Court of Common Pleas of Luzerne County on March 28, 2019 following his conviction of possession with intent to deliver a controlled substance (cocaine) ("PWID") and other drug offenses. Appellant contends the trial court erred by denying his motion to suppress, and challenges the sufficiency and the weight of the evidence. Following review, we affirm.[1]

As a result of events that occurred on January 6, 2017, Appellant was arrested and charged with PWID, conspiracy, possession of a controlled

---

[1] The Commonwealth filed an Application for Enlargement of Time to file its brief. The Application is hereby GRANTED and the Commonwealth's brief is accepted as filed on June 22, 2020.

substance (cocaine), possession of a small amount of marijuana, and possession of drug paraphernalia.[2] He filed a motion to suppress, contending the search and seizure were unlawful.

A suppression hearing was conducted on May 11, 2018. At the hearing, the Commonwealth presented the testimony of Police Officers James Conmy and Jason Oliver of the Wilkes-Barre Police Department. At the conclusion of Appellant's suppression hearing, the trial court announced its Findings of Fact and Conclusions of Law.

Findings of fact, as announced by the court, indicated that Officers Conmy and Oliver were on duty in a marked police car on January 6, 2017 at approximately 7:30 p.m. As they drove on Butler Street, they passed a Ford SUV traveling in the opposite direction. After both officers observed an inoperable brake light on the rear of the SUV, Officer Conmy turned the police car around and followed the SUV. After the SUV made a right turn at a red light at an intersection marked with a "no turn on red" sign, the officers initiated a traffic stop. Notes of Testimony ("N.T."), Suppression Hearing, 5/11/18, at 32-33.[3]

_____

[2] 35 P.S. § 780-113(a)(30), 18 Pa.C.S.A. § 903, and 35 P.S. § 780-113(a)(31), (a)(16), and (a)(30).

[3] For purposes of context, we have included some citations to the suppression hearing transcript that reflect testimony offered by Officers Conmy and Oliver.

Officer Conmy identified the driver as Jettie Johnson ("Johnson") and the passenger as Appellant, Ramel Mosley. *Id.*

As the officers approached the SUV, both detected the odor of marijuana coming from the SUV. The officers ran the occupant information through their computer system and learned that Johnson had a suspended driver's license. *Id.* at 34. The officers also noticed that the SUV's inspection was expired. Officer Conmy filled out a citation for the inspection violation, gave a warning for the brake light, and informed Johnson that his license was suspended. *Id.* at 13, 34. Because the vehicle was not legally parked, Officer Conmy offered the option of having the SUV towed or having Appellant, who had a valid New York license, drive the vehicle. *Id.* at 11-13. Johnson and Appellant opted for the latter option. Meanwhile, both Johnson and Appellant indicated they had earlier smoked marijuana. *Id.* at 13.

Because Johnson and Appellant were going to get out of the SUV to switch positions, Officer Conmy informed Johnson that the officers would check them both for safety purposes when they got out of the vehicle. *Id.* at 13-14. During the pat-down search, the officers "uncovered various items." *Id.* at 34. As reflected in the transcript, those items included a wad of cash in Johnson's pants pocket, detected by Officer Conmy, and cash in Appellant's pocket, detected by Officer Oliver. *Id.* at 14, 29.

When Appellant got out of the SUV, he left the passenger side door open. Officer Conmy could see a white bag in the door's storage compartment

that was consistent with powder cocaine. He seized that bag and a black grocery bag next to it. Picking up the black bag, he determined, based on his training and experience, it was consistent with crack cocaine. At that point, Appellant and Johnson were taken into custody and a search of their persons was conducted. Johnson admitted he had a bag of marijuana in his underwear. Appellant had a glass vial in his pocket that was later opened to reveal marijuana. There was another bag of marijuana between the front passenger seat and the center console. *Id.* at 14-15.

Another officer, Officer Holmes,[4] arrived on the scene with his K-9 partner. The dog alerted Officer Holmes to the front passenger seat area of the SUV. The vehicle was then towed. Johnson and Appellant were taken to headquarters. *Id.* at 15-16.

Conclusions of law, as announced by the court, included that the officers "had a requisite suspicion and probable cause" to perform the traffic stop, *id.* at 33; that "[t]he pat-down search was valid and lawful under the situation for the officers' safety. Any items seized, therefore, on the person of the individuals are admissible as evidence at trial," *id.* at 34; and that "[t]he seizure of the cocaine and crack/cocaine was lawful in that the items were discovered in plain view in an area which Officer Conmy had a right to be in." *Id.*

---

[4] In the trial transcript, the officer is identified as Officer Homza. N.T., Trial, 1/22/19, at 13, 67, 78.

The court concluded:

[B]ased upon the findings of fact and conclusions of law, all of the items that were seized and taken into evidence by the Wilkes-Barre Police Department at said time were seized lawfully and were done not in violation of any Constitution[al] Rights or due process violations of the rights of [Appellant] under either the United States or Pennsylvania Constitutions, and, therefore, said items were lawfully seized and would be admissible at trial in this matter.

Based upon that, the motion to suppress physical evidence filed by [Appellant] is hereby denied.

*Id.* at 35.

Appellant was charged with PWID and related crimes, as set forth above. Following denial of his motion to suppress, Appellant's case proceeded to trial on January 22, 2019. The Commonwealth again presented the testimony of Officers Conmy and Oliver. The officers' testimony at trial was broader than, but consistent with, the testimony offered at the suppression hearing. The Commonwealth presented an additional witness at trial, Officer Duffy, who testified as an expert and rendered an opinion that the cocaine recovered from the SUV was consistent with PWID rather than personal use. N.T., Trial, 1/22/19, at 85-122.

Following trial, a jury convicted Appellant of PWID, possession of a controlled substance (cocaine), and possession of drug paraphernalia. The jury acquitted Appellant on the conspiracy charge. The trial court found Appellant guilty of possession of a small amount of marijuana. The court ordered a pre-sentence investigation report and scheduled sentencing for

March 28, 2019. At the sentencing hearing, Appellant presented a motion to set aside the verdict as against the weight of the evidence. The court denied the motion and sentenced Appellant to a term of 90 to 180 months' incarceration for PWID. In addition, the court imposed a sentence of thirty days' probation for possession of a small amount of marijuana, concurrent with the PWID sentence, and twelve months' probation for possession of drug paraphernalia, also concurrent with the PWID sentence. Appellant's possession of a controlled substance conviction merged with PWID.

After the trial court denied Appellant's post-sentence motions, he filed a notice of appeal to this Court. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents three issues for our consideration:

A. Did the lower court err in denying [A]ppellant's motion to suppress physical evidence as the stop, search, and seizure was not based on probable [cause] in violation of Article I Section 8 of the Pennsylvania Constitution and the 4th and 14th Amendments of the United States Constitution?

B. Was the evidence presented at trial insufficient as a matter of law to find [Appellant] guilty beyond a reasonable doubt?

C. Was the verdict against the weight of the evidence presented at trial?

Appellant's Brief at 4.

In his first issue, Appellant claims the court erred by denying his motion to suppress. As this Court has explained:

Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record

- 6 -

and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Mbewe*, 203 A.3d 983, 986 (Pa. Super. 2019) (quotations and citations omitted).

Having reviewed the transcript of the suppression hearing, we find the court's findings of fact announced at the conclusion of the hearing are supported by the record. N.T., Suppression Hearing, 5/11/18, at 32-35. Therefore, we are bound by those findings. We further find the suppression court properly applied the law to those facts.

With respect to the initial traffic stop, both officers observed that a rear brake light was inoperable. Further, the vehicle made a right hand turn on a red light at an intersection where a right turn on red was not permitted.

As this Court held in *Commonwealth v. Harris*, 176 A.3d 1009 (Pa Super. 2019):

"Traffic stops based on a reasonable suspicion: either of criminal activity or a violation of the Motor Vehicle Code under the

- 7 -

authority of Section 6308(b)[5] must serve a stated investigatory purpose." ***Commonwealth v. Feczko***, 10 A.3d 1285, 1291 (Pa. Super. 2010) (*en banc*) (citation omitted). For a stop based on the observed violation of the Vehicle Code or otherwise non-investigable offense, an officer must have probable cause to make a constitutional vehicle stop. ***Feczko***, 10 A.3d at 1291 ("Mere reasonable suspicion will not justify a vehicle stop when the driver's detention cannot serve an investigatory purpose relevant to the suspected violation."). Pennsylvania law makes clear that **a police officer has probable cause to stop a motor vehicle if the officer observes a traffic code violation, even if it is a minor offense**. ***Commonwealth v. Chase***, 599 Pa. 80, 960 A.2d 108 (2008).

***Id.*** at 1019 (emphasis added).

The court properly concluded that the officers had probable cause to stop the SUV. It was not necessary for the officers to investigate further whether the brake light was out. Having observed the traffic code violation, they had probable cause to make the stop. ***Commonwealth v. Salter***, 121

_____

[5] 75 Pa.C.S.A. § 6308(b) (Authority of police officer) provides:

Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

***Id.***

A.3d 987, 994 (Pa. Super. 2015). There is no basis to disturb the court's conclusion of law with respect to the initial stop.

With regard to the search of Appellant's person and the SUV, the testimony revealed that Appellant was sitting in the front passenger seat of the SUV. When Appellant got out of the vehicle, Officer Conmy observed a white bag, consistent with powder cocaine, in plain sight in the storage compartment of the passenger's side door. Next to that bag was a black bag that Officer Conmy determined, based on his training and experience, was consistent with crack cocaine.

As this Court recently reiterated:

Generally, a warrant stating probable cause is required before a police officer may search for or seize evidence. ***Commonwealth v. Anderson***, 40 A.3d 1245, 1248 (Pa. Super. 2012). However:

the plain view doctrine provides that evidence in plain view of the police can be seized without a warrant, ***Coolidge v. New Hampshire***, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), as modified by ***Horton v. California***, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990), and it was adopted by our Supreme Court in ***Commonwealth v. McCullum***, 529 Pa. 117, 602 A.2d 313 (1992). The plain view doctrine applies if 1) police did not violate the Fourth Amendment during the course of their arrival at the location where they viewed the item in question; 2) the item was not obscured and could be seen plainly from that location; 3) the incriminating nature of the item was readily apparent; and 4) police had the lawful right to access the item.

***Id.***

"Courts have alternatively described the plain view doctrine in terms of a three-prong test": The plain-view doctrine permits "the warrantless seizure of an object when: (1) an officer views the object from a lawful vantage point; (2) it is immediately apparent

to him that the object is incriminating; and (3) the officer has a lawful right of access to the object." ***Commonwealth v. Luczki***, 212 A.3d 530, 547 (Pa. Super. 2019). "There can be no reasonable expectation of privacy in an object that is in plain view. To judge whether the incriminating nature of an object was immediately apparent to the police officer, reviewing courts must consider the totality of the circumstances." ***Id.*** "In viewing the totality of the circumstances, the officer's training and experience should be considered." ***Id.***

***Commonwealth v. Bumbarger***, --- A.3d ---, 2020 PA Super 65, \*7 (filed March 16, 2020).

Here, Appellant exited the SUV to exchange positions with Johnson and left the SUV's passenger side door open. Officer Conmy saw the cocaine in plain sight in the storage compartment of the passenger side door. Officer Conmy did not have to move any items to see the powder cocaine in plain view. Based on his training and experience, Officer Conmy recognized the contents of the bag as cocaine. As the court observed, "Probable cause exists where the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent individual in believing that an offense was committed and that the defendant has committed it." Trial Court Opinion, 10/3/19, at 7 (quoting ***Commonwealth v. Dennis***, 612 A.2d 1014, 1015-16 (Pa. Super. 1992)).

Moreover, both Officer Conmy and Officer Oliver detected the odor of marijuana as they approached the SUV. "[T]he odor of marijuana alone, particularly in a moving vehicle, is sufficient to support at least reasonable suspicion, if not the more stringent requirement of probable cause." ***In***

***Interest of A.A.***, 195 A.3d 896, 904 (Pa. 2018) (citing, *inter alia*, ***United***

***States v. Ventresca***, 380 U.S. 102, 111 (1965) (odor may be sufficient to

establish probable cause)).

The suppression court's finding of probable cause to search Appellant

and the vehicle is supported by the record.[6] We find no error in the court's

denial of Appellant's suppression motion. Appellant's first issue fails.

In his second issue, Appellant contends the evidence at trial was

insufficient to support his conviction of PWID (cocaine).

> The standard we apply in reviewing the sufficiency of the evidence
> is whether viewing all the evidence admitted at trial in the light
> most favorable to the verdict winner, there is sufficient evidence
> to enable the fact-finder to find every element of the crime beyond
> a reasonable doubt. In applying the above test, we may not weigh
> the evidence and substitute our judgment for the fact-finder. In
> addition, we note that the facts and circumstances established by
> the Commonwealth need not preclude every possibility of
> innocence. Any doubts regarding a defendant's guilt may be
> resolved by the fact-finder unless the evidence is so weak and
> inconclusive that as a matter of law no probability of fact may be

---

[6] Appellant notes that our Supreme Court has granted a petition for allowance of appeal in ***Commonwealth v. Alexander***, No. 151 EAL 2019 (Pa. filed September 24, 2019), to consider whether its decision in ***Commonwealth v. Gary***, 91 A.3d 102 (Pa. 2014), should be overruled or limited with respect to warrantless vehicle searches. Appellant's Brief at 22-24. Appellant suggests that overruling or limiting ***Gary*** would entitle Appellant to relief in light of the absence of a warrant to search the SUV. ***Alexander*** is inapposite. In ***Alexander***, an officer took a key from Alexander's key ring and used it to open and search a locked metal box found in the car. Alexander is seeking to reinstate the general warrant requirement of Article I, Section 8. However, as outlined in ***Gary***, exceptions to the warrant requirement have been recognized under Article I, Section 8, based on individual factual situations, including plain view observations. Here, the cocaine was detected by a plain view observation. Regardless of the outcome in ***Alexander***, disposition of the issue as presented in that case does not offer a path to relief for Appellant.

- 11 -

drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Roberts*, 133 A.3d 759, 767 (Pa. Super. 2016) (quoting

*Commonwealth v. Brooks*, 7 A.3d 852, 856-57 (Pa. Super. 2010)

(additional citations omitted)).

As this Court recognized in *Roberts*:

To sustain a conviction for PWID, "the Commonwealth must prove both the possession of the controlled substance and the intent to deliver the controlled substance." *Commonwealth v. Lee*, 956 A.2d 1024, 1028 (Pa. Super. 2008) (citations omitted). It is well settled that "[i]n narcotics possession cases, the Commonwealth may meet its burden by showing actual, constructive, or joint constructive possession of the contraband." *Commonwealth v. Vargas*, 108 A.3d 858, 868 (Pa. Super. 2014) (*en banc*) (quotation and quotation marks omitted). Here, the police did not discover the controlled substances on Appellant's person, and thus, we must determine whether the Commonwealth sufficiently established that Appellant had constructive possession of the controlled substances.

*Id.*

Appellant contends the Commonwealth failed to prove he constructively possessed the cocaine discovered in the SUV. This Court has defined constructive possession as

a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as "conscious dominion." We subsequently defined "conscious

- 12 -

dominion" as "the power to control the contraband and the intent to exercise that control." To aid application, we have held that constructive possession may be established by the totality of the circumstances.

*Id.* at 767-78 (quoting *Commonwealth v. Brown*. 48 A.3d 426, 420 (Pa. Super. 2012)).

An "intent to maintain a conscious dominion may be inferred from the totality of the circumstances." [*Commonwealth v. Macolino*, 469 A.2d 132, 134 (Pa. 1983)]. . . . Additionally, our Court has recognized that "[c]onstructive possession may be found in one or more actors where the item in issue is in an area of joint control and equal access." [*Commonwealth v. Valette*, 613 A.2d 548, 550 (Pa. 1992)].

*Commonwealth v. Johnson*, 26 A.3d 1078, 1094 (Pa. 2011) (footnote omitted). "The Commonwealth may sustain its burden by means of wholly circumstantial evidence, and we must evaluate the entire trial record and consider all evidence received against the defendant." *Roberts*, 133 A.3d at 767 (citation omitted).

As noted, Officers Conmy and Oliver testified at trial and offered testimony consistent with the testimony from the suppression hearing that was summarized above.[7] That testimony was sufficient to establish that Appellant had conscious dominion over the drugs located in the passenger door storage compartment of the SUV. *See Roberts*, 133 A.3d at 767. In addition, Officer Daniel Duffy offered expert testimony, including his opinion

---

[7] *See* N.T., Trial, 1/22/19, at 3-35 (Oliver) and 35-80 (Conmy).

that the drugs were consistent with possession with intent to deliver rather than personal use. N.T., Trial, 1/22/19, at 110-11.

The trial court concluded:

Having presided over this trial, we do not hesitate to conclude that the evidence was sufficient to convict the Appellant of possession with intent to deliver cocaine. The trial testimony included evidence that the Appellant had more than $2,500.00 on his person at the time of the arrest, and that a canine officer trained to detect the presence of narcotics indicated the presence of same in the area where Appellant was seated within the vehicle. A quantity of what was later proven to be cocaine was observed by law enforcement in plain view in the passenger door pocket within the Appellant's reach. An additional quantity of crack cocaine was located next to the bag of powder cocaine. The officers did not locate any drug paraphernalia inside the vehicle which may have suggested the occupants possessed the drug for their own use.

Officer Daniel Duffy of the Wilkes-Barre City police department testified as an expert in narcotics identification and drug trafficking. Officer Duffy's expert report entered in to evidence [] concluded that the circumstances of the Appellant's arrest were more consistent with possession with intent to deliver cocaine. Having conducted our own independent review of the totality of the evidence in the light most favorable to the verdict winner, for all the aforementioned reasons, we find that there is ample evidence that the Appellant both possessed cocaine, but also that he intended to deliver it.

Trial Court Opinion, 10/3/19, at 9-10 (references to notes of testimony omitted).

Viewing all the evidence admitted at trial in the light most favorable to the Commonwealth as verdict winner, we find there was sufficient evidence to enable the fact-finder to find, beyond a reasonable doubt, that Appellant possessed cocaine and did so with the intent to deliver. Therefore, Appellant's sufficiency challenge fails.

In his third issue, Appellant argues that the verdict was against the weight of the evidence. In **Commonwealth v. Clay**, 64 A.3d 1049 (Pa. 2013), our Supreme Court instructed:

A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. **Commonwealth v. Widmer**, 560 Pa. 308, 319, 744 A.2d 745, 751–52 (2000); **Commonwealth v. Brown**, 538 Pa. 410, 435, 648 A.2d 1177, 1189 (1994). A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. **Widmer**, 560 Pa. at 319–20, 744 A.2d at 752. Rather, "the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" **Id.** at 320, 744 A.2d at 752 (citation omitted). It has often been stated that "a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." **Brown**, 538 Pa. at 435, 648 A.2d at 1189.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

Appellate review of a weight claim *is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.* **Brown**, 648 A.2d at 1189. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. **Commonwealth v. Farquharson**, 467 Pa. 50, 354 A.2d 545 (Pa. 1976). One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

**Widmer**, 560 Pa. at 321–22, 744 A.2d at 753 (emphasis added).

- 15 -

> This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered.

*Id.* at 1054-55.

As the trial court determined, Appellant's challenge rests upon his assertion that there was no fingerprint or DNA evidence connecting Appellant to the cocaine, or evidence that he was observed holding or secreting the cocaine. Essentially, Appellant claimed Johnson was the guilty party. "Appellant's counsel made these arguments at trial. The jurors, exercising their prerogative as finder of fact, apparently chose not to credit them." Trial Court Opinion, 10/3/19, at 11. The trial court's sense of justice was not shocked by the verdict, nor is ours. We find no abuse of discretion in the trial court's denial of Appellant's motion for a new trial based on weight of the evidence.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 07/08/2020